33 So.2d 242

### KNIGHT v. SMITH.
#### 4 Div. 470.

Supreme Court of Alabama.
Nov. 28, 1947.

Rehearing Denied Jan. 22, 1948.

BROWN and SIMPSON, JJ., dissenting.

P. S. Lewis and C. R. Lewis, both of Dothan, for appellant.

L. A. Farmer, of Dothan, for appellee.

GARDNER, Chief Justice.

The bill in this cause was filed by the appellant seeking equitable relief in the nature of specific performance of a contract between plaintiff and one Jim Smith to will to plaintiff a certain described house and lot, and, also as incidental to full relief, canceling a deed executed by Jim Smith to the defendant, his cousin, J. B. Smith. From a decree sustaining a demurrer to the bill as last amended plaintiff prosecutes this appeal.

The ruling of the Chancellor was well rested upon the recent case of Vickers v. Pegues, 247 Ala. 624, 25 So.2d 720.

The facts alleged in the amended bill are in material respects similar to those appearing in the Vickers case. They are in substance that the said Jim Smith, over seventy years of age, infirm, in bad health, agreed with plaintiff that if she would give up the work at which she was then engaged and come live with him and care for him in every respect until his death he would will his house and lot to her. Plaintiff not only, according to the averments of this bill, fully performed her part of the contract, but in addition paid out of her own funds the taxes on the property for two years, the water bill, as well as doing some paint and repair work on the house. She likewise avers that she paid some doctor's bills of Jim Smith from her own funds, as well as fines for offenses committed by him.

This contract was verbal. That the amended bill fully shows a valuable consideration for the promise alleged is well sustained by the Vickers case, as well as the authorities therein noted. As pointed out in the Vickers case, supra, it is now settled in this State that an oral agreement to make a will devising real estate unaccompanied by payment of some valuable consideration and delivery of possession of the lands to be devised is void under the provisions of our statute of frauds. Title 20, § 3, Code 1940; Manning v. Pippen, 86 Ala. 357, 5 So. 572, 11 Am.St.Rep. 46.

The amended bill is to be construed as disclosing that plaintiff moved into the house with the said Jim Smith, that is to say, the possession was joint. True there are averments to the effect that plaintiff took possession of the house and lot and that the said Jim Smith thereafter recognized said possession and made known to others that he had given said property and exclusive possession and control thereof to plaintiff. Nevertheless, the title was in Jim Smith. In such a case it is well established that the possession will be referred to the legal title. The decision in the Vickers case, supra, which as we have observed, is in all material respects the same as here presented, was rested upon the case of Jones v. Jones, 219 Ala. 62, 121 So. 78, where the authorities were fully reviewed and the reasons for the rule therein discussed. In the Jones case we reviewed not only our own cases but authorities from other jurisdictions and recognized that there are decisions supporting the fact that the possession here shown suffices to meet the statute of frauds. But our decisions are to the effect that possession must be of a notorious and exclusive character to bring the case within the exception of the statute. And recognition was given in that case to the principle applied in the Vickers case, that the law refers the possession to the legal title.

Accepting as true the averments of the bill as amended it presents a hard case against the plaintiff. Nevertheless our statute of frauds, more stringent than in some jurisdictions, stands in the way of her relief.

We are cited by counsel for plaintiff to Cowin v. Salmon, 244 Ala. 285, 13 So.2d 190; Wagar v. Marshburn, 241 Ala. 73, 1 So.2d 303; Stone v. Lacy, 245 Ala. 521, 17 So.2d 865. But a study of these cases will demonstrate that the statute of frauds was not there involved. Nor have we overlooked the argument of counsel of points of differentiation between the present case and that of Vickers v. Pegues, supra. Upon due consideration, however, we are not persuaded these differences are of material moment. The fact that there was a relationship in the Vickers case and none here, or that in the present case the defendant is charged with notice of the agreement, can have no material bearing upon

the legal principle involved so far as concerns the statute of frauds. And the further averments that Jim Smith stated to others that he had turned over the possession of the property to the plaintiff, and that he had given it to her, do not suffice to meet the requirements of the statute. Whatever the bill may aver in this respect, it yet remains that plaintiff and Jim Smith were in the joint possession of the property with the legal title yet in Jim Smith. It results that plaintiff under our decisions could not have been in the notorious and exclusive possession so as to satisfy the statute of frauds. As the court observed in Trammell v. Craddock, 93 Ala. 450, 9 So. 587, 588, speaking of a joint possession: "They involve a possession by the alleged vendee in common with the alleged vendor, and this can never satisfy the statute."

A contrary ruling would lose sight of the underlying purpose of our statute of frauds, the requirement that there be written evidence of contracts as to the sale of lands, to reduce contracts to a certainty, in order to avoid perjury on the one hand and fraud on the other. And the acts of part performance must refer exclusively to the contract sought to be enforced and be such as would not be done but for the latter. Formby v. Williams, 203 Ala. 14, 81 So. 682. And in Jones v. Jones, supra, this court quoted approvingly the following from 36 Cyc. 660: "If the possession * * * could be accounted for just as well by some other right or title actually existing in the vendee's favor, or by some relation between him and the vendor other than the alleged oral contract, it is not such a possession as the doctrine requires." [219 Ala. 62, 121 So. 79.]

As we have observed, the Chancellor correctly rested his decision upon Vickers v. Pegues, supra, and the authorities therein cited, particularly Jones v. Jones, supra, in support of his ruling. We think they are conclusive.

It results therefore, that the decree appealed from is correct and should be here affirmed. It is so ordered.

Affirmed.

All the Justices concur, except BROWN and SIMPSON, JJ., who dissent.

BROWN, Justice (dissenting).

The majority opinion characterizes this case as "a hard case" but this characterization does not satisfy or meet the requirements of justice and equity. When the facts alleged in the bill are treated as true, admitted by the demurrer to be true, it is more than "a hard case", as foreshadowed by the opinion. It is a failure of justice.

The facts alleged, stated in brief, are that complainant had a good job at Camp Rucker, was engaged in work receiving good compensation when the deceased, Jim Smith, approached her and induced her to give up her job and go with him to his home to take care of said Smith, to do his drudgery and look after him until his death, and in carrying out and performing her part of the contract complainant continued to look after and care for said Jim Smith until his death. After complainant went to his home Smith made an agreement with her, in the presence of witnesses, that if she would do these things for him, he would give his house and lot where they lived and vest title in her by will.

The complainant not only looked after Jim Smith, but according to the averments of the bill, she was put in full possession and control of the property by said Smith in his lifetime, he declaring in the presence of witnesses, that she had full control and possession of the property which he had surrendered to her. She paid the taxes, made repairs on the house and paid for them and complainant performed all the obligations which she assumed in the contract with Smith. Smith was old, infirm and sickly. Complainant nursed him, cooked for him, washed his clothes, performed household duties and cared for him until his death. After years of service, Smith rewarded her efforts by fraudulently conveying the house and lot to a relative for a consideration of $1. So far as appears in the averments of the bill, this is the only property the said Smith owned, and if the pronouncement of the majority stands, complainant is left without remedy, and courts of equity are deprived of their glorious heritage of leaving no right without a remedy.

This is indeed "a hard case" and in order to deny relief the majority invoke two

rules of evidence to rebut facts admitted as true by the demurrer. The first of these rules is, if two persons are in possession of a parcel of real property, nothing further appearing, the presumption of law is that the holder of the legal title is in possession. The other is that verbal disposition of real property under the statute of frauds is void unless the purchase money or a part thereof is paid and the purchaser is put in possession. This rule of evidence is not only invoked in this case to dispute the admitted facts, but to protect the fraudulent grantee of said Jim Smith. These rules of evidence are invoked to destroy complainant's case, resting on the admitted truth of the bill's averments before she has an opportunity to present evidence. Wood et al. v. Lett et al., 195 Ala. 601, 71 So. 177.

It is well settled law in Alabama that the statute of frauds cannot be invoked to defeat rights resting upon an executed contract by the complaining party—that is, a contract which has been performed by the party to its letter. Among other cases we cite the following: Endsley v. Darring, 249 Ala. 381, 31 So.2d 317; Warner v. Warner, 248 Ala. 556, 28 So.2d 701; Talley v. Talley, 248 Ala. 94, 26 So.2d 586; III Brickell's Digest, p. 514, § 100, and authorities cited; Kling v. Tunstall, 124 Ala. 268, 27 So. 420; Read v. Rowan, 107 Ala. 366, 18 So. 211; McMahan v. Jacoway, 105 Ala. 585, 17 So. 39.

It is well settled that the validity of the contract under the statute of frauds cannot be presented by demurrer unless it affirmatively appears on the face of the bill that the contract is void. Johnson v. Maness, 232 Ala. 411, 168 So. 452; McDonald v. McDonald, 215 Ala. 179, 110 So. 291; Brown etc. Lumber Co. v. Rattray, 238 Ala. 406 (409), 192 So. 851, 129 A.L.R. 526; Trammell v. Craddock, 93 Ala. 450, 9 So. 587.

In pleading or declaring on a contract which is required to be in writing, it is not necessary to aver that it was reduced to writing. Martin v. Wharton, 38 Ala. 637, 641. See also Irvin v. Irvin, 207 Ala. 493, 93 So. 517.

Again, where the contingency upon which the liability is to accrue may happen within one year, the agreement is not one embraced within the statute. Carey Mfg. Co. v. Southern Const. Co., 2 Ala.App. 292, 56 So. 746; Brown, etc., Lumber Co. v. Rattray, supra. As applied to the instant case, Smith's death might have occurred within one year after the agreement was made and this contingency relieves it from the operation of the statute of frauds.

The statute of frauds cannot be invoked to uphold a conveyance made to defraud complainant of her demands. Code of 1940, Tit. 20, § 7.

"It is well settled in most jurisdictions that, where one party to an oral contract has, in reliance thereon, so far performed his part of the agreement that it would be perpetuating a fraud on him to allow the other party to invoke the statute of frauds, equity will regard the case as being removed from the operation of the statute. This doctrine, however, as shown supra, § 249, is an equitable one and is not ordinarily applied in actions at law based on the contract unless the part performance consists of complete and full performance by at least one party thereto. * * *" 37 C.J.S., Frauds, Statute of, §§ 249, 251.

This doctrine last above stated is consistent with our cases cited at the head of this opinion. I, therefore, respectfully dissent.

SIMPSON, J., concurs in the conclusion of the foregoing dissent.