163 So.2d 623

**Andrew J. KRIEGER, Jr., et al.**

**v.**

**Joe KRIEGER et al.**

**1 Div. 74.**

Supreme Court of Alabama.

April 16, 1964.

---

Wilters & Brantley, Bay Minette, for appellants.

Chason & Stone, Bay Minette, for appellees.

PER CURIAM.

Appellees, two of whom act both in a fiduciary and individual capacity, filed their amended declaratory bill of complaint in the Equity Division of the Circuit Court of Baldwin County (a) to effect final settlement of two related estates; (b) praying the court to declare a resulting trust in eighty acres of land, or in the alternative, to decree specific performance of an alleged oral contract for the conveyance of the acreage; (c) praying the court to decree null and void a certain deed for want of authorized delivery pending execution of the instrument by all the children of the grantee.

It appears from the pleadings on file that Andrew J. Krieger and his wife, Katherine Krieger, both died intestate, leaving certain property subject to administration and the payment of debts. Mr. Krieger having died first, his wife, Katherine Krieger, was duly appointed and entered upon the duties of administratrix of her husband's estate, but never made final settlement. Declaratory petitioners, Joe Krieger and his sister, Johanna Perez, were appointed co-administrators of the estate of Mrs. Krieger and in the bill of complaint filed an account for settlement of both estates. According to the findings of the trial court, all parties to this suit agreed that the accounting was correct. No challenge is here made that the accounts were not correct.

Joe Krieger in his individual capacity alleges that he and his father entered into an oral agreement whereby the father was to purchase in his own name, at a consideration of $2500, eighty acres of land, which he agreed to convey to his son on payment of the consideration which the father had paid. All of the children except Andrew J. Krieger and Eva Horn conveyed their interest in this land to Joe Krieger, who paid each his pro rata share of the alleged balance due on the consideration. The grantee, Joe Krieger, alleged that he paid to his father the sum of $200 on the consideration, leaving a balance due of $2300. The trial court in its decree ordered appellants Andrew Krieger, Jr., and Mrs. Eva

Horn to execute and deliver a conveyance to appellee Joe Krieger on his payment of their pro rata share, or failing, that the Register execute a deed for them and deliver to appellee Joe Krieger.

Complainants in their individual capacities further contend that on April 13, 1955, they conditionally executed a deed to their mother, with a recited consideration of ten dollars and other good and valuable consideration, conveying to her all the real and personal property owned by the said Andrew J. Krieger, Sr. (their father), at the time of his death; that according to the agreement of the grantors said instrument was not to be valid and binding, nor to be delivered without the signature of all the children; that Eva Horn, one of the children, never joined in the execution of the instrument. The trial court, in accordance with the prayer of the complaint, declared the deed null and void.

■ One assignment of error made and argued by appellants is that the court erred in overruling their demurrer which contained a ground that the complaint is multifarious. This is the only ground of demurrer argued and the only one here to be considered.

We think this ground is untenable. We held in Graham v. Powell, 250 Ala. 500, 35 So.2d 175(3), as follows:

> "Although a bill is not necessarily multifarious when it seeks alternative or inconsistent reliefs growing out of the same subject matter, or founded on the same contract or transaction, or relating to the same property between the same parties, Equity Rule 15, Code 1940, Title 7, p. 1055; Gaines v. Stevens, 248 Ala. 572, 28 So.2d 789, it is multifarious when it seeks relief as to two distinct subjects having no connection with or dependence on each other. Singer v. Singer, 165 Ala. 144, 51 So. 755, 29 L.R.A.,N.S., 819, 138 Am. St.Rep. 19, 21 Ann.Cas. 1102; East v. East, 80 Ala. 199, 200; Marsh's Administrator v. Richardson's Administra-

tor, 49 Ala. 430, 432; Hardin & Williams v. Swoope, 47 Ala. 273, 276." (35 So.2d 176)

Under the allegations of the complaint all parties to the suit are the children and heirs of Mr. and Mrs. Krieger, with identity of interest in the estates of both parents. The question is presented as to what comprises the estate of each parent. The subjects under consideration are kindred, and not distinct, with no connection or dependence on each other. York v. York, 202 Ala. 306, 80 So. 371, cited by appellants, is readily distinguishable from the case at bar. There a single bill sought to remove two distinct estates from the probate court to the equity court for administration. The heirs of the two estates were different. There was no interrelation of the two estates—no connecting link or merging circumstance. Here Mrs. Krieger never made a final settlement of her husband's estate. By merging the two, settlement was facilitated as shown by the agreement of all the parties. Likewise, a determination was necessary as to the ownership of the eighty acres.

We cited with approval in Singer v. Singer, 165 Ala. 144, 51 So. 755, 29 L.R.A.,N.S., 819, the case of Ferry & Akin v. Laible, 27 N.J.Eq. 146, 150, wherein we quoted therefrom as follows:

> "No general rule defining what causes of action may properly be joined, and what cannot, can be laid down. The question is always one of convenience in conducting a suit, and not of principle, and is addressed to the sound discretion of the court."

This court, in Singer v. Singer, supra, held that a bill is not multifarious unless the several matters are "perfectly distinct and unconnected against one defendant."

We also held in Littleton et al. v. Littleton et al., 238 Ala. 40, 188 So. 902 (cited by appellants), as follows:

> "As often observed, no universal rule in regard to multifariousness is admitted to be established to cover all possi-

ble cases. The objection relates largely to a matter of discretion, and every case must in a measure be governed by what is convenient and equitable under its peculiar facts, subject to the recognized principles of equity jurisprudence. 'It is, therefore, always proper to exercise this discretion in such a manner as to discourage future litigation and prevent multiplicity of suits, and never so as to do plain violence to the maxim that "courts of equity 'delight to do justice, and not by halves.' " ' City of Marion v. Underwood, 231 Ala. 225, 164 So. 296; O'Neal v. Cooper, 191 Ala. 182, 67 So. 689." (188 So. 903)

In the suit at bar we further observe that it was necessary to determine the validity of the deed from all the children, except Eva Horn, to their mother.

We think the court did not err in overruling the demurrer on the ground stated and argued on this appeal. It was within its sound discretion to merge all the contentions for judicial determination. Several separate actions by such merger were prevented.

Did the trial court err in its judicial determination that Joe Krieger was the owner of the eighty acres of land pursuant to the alleged oral contract with his father? The correctness of this determination depends on (a) was there an oral agreement between Joe Krieger and his father; (b) did Joe Krieger have notorious and exclusive possession of the eighty acres so as to obviate the bar to such agreement by the statute of frauds.

■ Joe Krieger could not lawfully testify to such an agreement because of the so-called "dead man's statute," § 433, Title 7, Code 1940. But he produced two other witnesses who were not disqualified and who testified that Mr. Krieger, the father, purchased the land and had an agreement with his son that on payment of the consideration of $2500 the land was to belong to the son. Joe Krieger introduced in evidence a paid check for $200, payable to his father and bearing his endorsement, which he (Joe) contended was in part payment of the $2500. The respondents contended that the check was in repayment of a sum of money loaned the son by the father to purchase a truck. This testimony presented a question of fact for decision of the trial judge.

■ Of more serious import is whether or not Joe Krieger ever assumed exclusive and notorious possession of the lands so as to meet the demand of the statute of frauds. —§ 3(5), Title 20, Code 1940.

We held in Smith v. East Alabama National Bank, 221 Ala. 322, 128 So. 600 (1–3):

"The prescriptions of the statute of frauds (Code 1923, § 8034) are not to be denied or evaded. The single exception which will withdraw a parol contract for the sale or lease of land from the operation of the statute is, when the purchase money, or a portion thereof, is paid, and the purchaser is put in possession by the seller. Heflin v. Milton, 69 Ala. 354, 357. It may be conceded that the transaction between Brown, the president of the plaintiff bank, and the defendant, construed according to the testimony of the former, satisfied the statute in respect to the payment of a part of the purchase money, which need not be made in money, but may be made in anything of money value; but we are unable on the evidence to say that defendant was placed in possession as owner or that the evidence fairly interpreted with all permissible favor to the plaintiff, permitted of that interpretation. Defendant was therefore entitled to the affirmative charge as to the item of $200 requested by him in due form." (128 So. 601)

Defining the character of possession, we held in Knight v. Smith, 250 Ala. 113, 33 So.2d 242(5), that such possession must be notorious and exclusive to bring the case within the exception of the statute. There

are many other decisions of like import which we will not undertake to cite.

There was much evidence touching the character of Joe Krieger's possession that presented a question of fact for determination of the trial court. The statement of Joe Krieger's testimony on this subject of possession and other contentions appearing in appellants' brief, which appellees acknowledge is correct, with one exception, is as follows:

"Joe [Krieger] testified that his brother, Andrew, cleared up part of this land; that he cleared up about 2½ acres in one 40 and 5 acres in the other. He testified further that his brother helped fence part of the land; that his brother sold some timber from this land; that his daddy made Andrew J. Krieger, Jr., buy some wire from the money he received from the sale of the timber. Joe Krieger testified that his brother farmed part of this land until his mother died; that he did not pay rent to anyone for it; that he did not get permission from Joe to farm the land. Joe's testimony further shows that his mother cut timber from this 80 acre tract of land and used the money to 'fix up the bathroom.' The testimony of Joe Krieger shows further that his mother, Katherine Krieger, was administratrix of her husband's estate and that he is the administrator of both the father and mother's estate. It shows further that the ditching done on this land was done after his mother's death; that the liming was done before and after his mother's death; that part of the fencing was done after his mother's death."

In addition to the above, the testimony of Joe Krieger shows he fenced the property, cleared part of it, and planted crops on it continuously since 1950. He testified further that he hired different people to clear part of the land; that he has fertilized, drained it, and put lime on it. The land was assessed to Andrew J. Krieger, Sr., the father, until the year 1951, during which year he died. It was assessed to Katherine Krieger, the widow, from 1952 to 1957. She died in this latter year. It was assessed to Joe Krieger as administrator for the tax year 1958, and assessed to Joe Krieger individually for the tax year 1959. The deed to the father was made in January, 1949. The alleged payment of $200 was by check dated May 10, 1950.

Also the following questions to Joe Krieger and answers thereto appear in the record of the evidence.

"Q. Did he (Andrew Krieger, Jr.) come to you for permission to rent the land, or use the land—I want to know whether he did or not?

"A. No sir, he didn't pay me no rent.

"Q. Did he ask you about renting it from you?

"A. No sir.

"Q. He didn't ask you anything about it?

"A. He didn't ask nobody; whenever he wanted to do anything, he done it; he didn't ask anybody.

"Q. You didn't make any effort to throw him off?

"A. I did.

"Q. What did you do?

"A. I told him to leave it alone."

This complainant further testified that he had been in possession of the land since January 6, 1949, which was the date the father acquired title to the land; also that he had used the property, making certain improvements and cultivating it as above stated.

We held in Morris v. Card, 223 Ala. 254, 135 So. 340(2):

" * * * The testimony of a witness, as a collective fact, that he is in possession, is sufficient evidence of possession, if it is not further shown on

cross examination that the statement was a mere conclusion without the required supporting fact. Sovereign Camp, W. O. W. v. Hoomes, 219 Ala. 560, 564, 122 So. 686, and authorities there cited. * * *"

The next witness for complainants was Frank Koehler. This witness testified that he was a neighbor of Joe Krieger; that he was familiar with the eighty-acre tract of land; that he cleared the land for Joe Krieger on two different occasions and that Joe paid him for such services. Checks representing the payments were introduced in evidence. He also testified that he had seen Andrew Krieger farm part of this land; that he had seen Joe put a fence around this tract; also that he had seen Andrew clear a small portion of the tract. He further said that it had been seven or eight years since he had seen Andrew Krieger farm on this tract.

Johanna K. Perez, witness for complainants, stated that she was the sister of Andrew Krieger, and was familiar with the eighty-acre tract of land in question. She said that Joe wanted to buy this land, but did not have the money; that her daddy said, "I will pay for the land, but I am not getting it in your name." That he agreed to deed it to Joe whenever he could repay his father for it. The purchase price was $2500. She said further that Andrew and his wife did not know anything about this transaction between her father and Joe; that only her father and her brother, Joe, and her mother knew anything about it. She was asked the question:

"Q. Did any of the rest of the family?

"A. No sir.

"Q. Was the matter discussed with the public in any way that this was Joe's land?

"A. No sir.

"Q. This was sorter a family secret was it not.

"A. No, it was between my dad and Joe."

She said further that during her mother's lifetime, she was still controlling the land; that Andrew cut timber from this land and his mother made him buy fencing with it; that Joe cut timber from this property, but her mother got the money for this. She said further that there was no limit of time to have Joe use it until the property was paid for.

Andrew J. Krieger, Jr., was the first witness to testify for the respondents. The trend of this testimony is that he cleared and farmed part of the land free of rent; that he farmed it for four years; that he never heard of his brother Joe claiming title to the land; that he negotiated to purchase this land, but was never able to pay for it. He said further that he knew that Joe had Joe Snider and Mr. Bain clear part of the land with a bulldozer; also that his mother paid the taxes on the land until her death. He also testified that he discussed the matter of clearing this tract with his mother, and she told him to clear any he wanted. He never discussed this matter with his brother Joe, nor did Joe ever tell him that his father purchased the land for him.

Eva Horn, a respondent, testified that she had seen her mother and Andrew and Andrew's children clearing part of this land and had seen crops which Andrew planted; that Andrew started farming before Joe did; that the first time she ever heard of Joe claiming the land was after her mother's death. She said her father paid for the tract. Also she testified that Joe started farming the land in 1950; that she had cattle on the property at the time and Joe tried to collect rent from her, but that she moved her cattle off the property. She further testified that she discussed the purchase of the land with her mother and her mother said they were going to keep it and let the boys farm it.

We wish here to state parenthetically that this case was tried ore tenus before the court with the understanding that ob-

jections to testimony were to be offered by the parties, in the absence of which such testimony would be considered by the court. The parties by agreement waived the provisions of Title 7, § 372(1), Recompiled Code of Alabama, 1958 (Act 101, General Acts 1943, p. 105).

There was evidence offered which supports the allegation of the bill of complaint that the grantors in their deed to their mother, Katherine Krieger, which allegedly embraced the eighty acres claimed by Joe Krieger, signed with the understanding and agreement that it was not to become effective unless all the children (heirs) joined in its execution.

Considering all the evidence, all of which we have carefully read (and some of it twice), it is our opinion that the trial court had evidence before him that supported the final decree as follows: Declaring null and void the instrument dated April 13, 1953, from the children, except Eva Horn, to their mother; (b) specifically enforcing the oral contract between the father, Andrew J. Krieger, and Joe Krieger, and to that end ordering Andrew Krieger ·and Eva Horn to execute and deliver a conveyance to the eighty acres, or upon failure to do so, ordering the Register to convey their interests in and to Joe Krieger. Other provisions of the decree are not here contested.

■ In affirming this decree, we do not necessarily mean to say that we are in accord with the findings of the trial court. We did not see or hear the witnesses. Such observation often is quite an important factor in reaching a correct evaluation of the evidence. This court will indulge all favorable presumptions to sustain the trial court's conclusion and will not disturb it unless palpably erroneous and manifestly unjust. Sieben v. Torrey, 252 Ala. 675, 42 So.2d 621(1). Nor will we "substitute our judgment on the effect of the evidence dealing with a pivotal question of fact for that of the trial court." Hooper v. Fireman's Fund Ins. Co., 272 Ala. 145, 130 So. 2d 3(4).

■ In their reply brief, appellants argue that Joe Krieger was guilty of laches in seeking specific performance of the alleged contract between him and his father with respect to the eighty acres of land. We do not find that this question was raised by demurrer or otherwise in the lower court. We find no assignment of error addressed to the question of laches. We, of course, can consider only the rulings of the court presented here by an appropriate assignment of error. Rule 1, Revised Rules of the Supreme Court, Title 7, Recompiled Code of 1958; Wetzel v. Hobbs, 249 Ala. 434, 31 So.2d 639(3).

The decree of the trial court is due to be affirmed and it is so ordered.

The foregoing opinion was prepared by B. W. Simmons, Supernumerary Circuit Judge, and was adopted by this court as its opinion.

Affirmed.

LIVINGSTON, C. J., and GOODWYN, COLEMAN and HARWOOD, JJ., concur.