Roy Smith filed suit against his twin brother Ray Smith for specific performance of an oral contract made 17 years earlier for the exchange of two parcels of land. The case was tried without a jury and judgment was rendered in favor of Roy. Ray appeals and asserts as one of his grounds that the trial court erred in not holding that the contract was barred by the Statute of Frauds. We agree.
The facts in this contract dispute are as follows: Ray Smith has title to an 80-acre rectangular tract of land which he originally purchased in 1943. In 1950, Ray acquired, along with his brother Roy and their mother, joint title to a 42-acre tract situated in a cattycornered position to the southwest of Ray's 80 acres. The attached Appendix illustrates the relative positions of these tracts of land. In 1960, Ray and his mother conveyed their interests in the 42-acre tract to Roy. This was done so that Roy could mortgage that property to obtain purchase money to buy an 80-acre tract immediately north of the 42 acres and immediately west of Ray's 80-acre tract.
The parties disagree as to any further significance of the 42-acre conveyance to Roy. Ray contends that the transfer was solely to enable Roy to buy the 80-acre tract to the north, and says he understood that Roy would convey 1/2 of the 42-acre block to Ray when the mortgage was eventually paid. Roy, on the other hand, claims that the conveyance of the 42 acres to him was part of a plan his parents devised whereby Roy would eventually convey 1/2 of the 42 acres to Ray with Ray in turn conveying 1/2 of his 80-acre tract to Roy, thus leading to the ownership of equal acreage by the twins (except for the 80-acre tract Roy purchased with the mortgage money).
Roy conveyed approximately 20 acres of the 42-acre tract to Ray on December 30, 1963. This is the date of the alleged oral contract by which Roy contends that Ray agreed to convey the north 1/2 of Ray's 80-acre tract to Roy. Ray denies such an agreement. In May 1981, Roy brought suit against Ray, asking for specific performance of the oral contract.
Ray herein appeals from the judgment rendered below in favor of Roy. Ray asserts the following as error: 1) the trial court's failure to accept the Statute of Frauds as a bar to enforcement of the oral contract; 2) the trial court's failure to accept the statute of limitations as a bar to enforcement of the oral contract; and 3) the trial court's enforcement of a contract conveying homestead property in spite of the failure of Ray's wife to consent to the contract. *Page 924 
We hold that the lower court erred when it failed to find the oral contract barred by the Statute of Frauds. We pretermit addressing appellant's other assertions of error.
The Alabama Statute of Frauds reads, in pertinent part, as follows:
Certain agreements void unless in writing.
 In the following cases, every agreement is void unless such agreement or some note or memorandum thereof expressing the consideration is in writing and subscribed by the party to be charged therewith or some other person by him thereunto lawfully authorized in writing:
. . . .
 (5) Every contract for the sale of lands, tenements or hereditaments, or of any interest therein, except leases for a term not longer than one year, unless the purchase money, or a portion thereof is paid and the purchaser is put in possession of the land by the seller.
Code, 1975, § 8-9-2. In Smith v. East Alabama National Bank,221 Ala. 322, 128 So. 600 (1930), this Court construed an earlier enactment of the Statute in this way:
 The prescriptions of the statute of frauds (Code 1923, § 8034) are not to be denied or evaded. The single exception which will withdraw a parol contract for the sale or lease of land from the operation of the statute is, when the purchase money, or a portion thereof, is paid, and the purchaser is put in possession by the seller. Heflin v. Milton, 69 Ala. 354, 357.
221 Ala. at 323, 128 So. at 601.
Therefore, in order for Roy Smith to win his case against his brother Ray, he had to prove not only the existence of the oral contract, but additionally that the contract met the exception to the Statute of Frauds; that is, that Roy gave the required consideration or a part thereof to Ray, and that Roy took possession of the land which was the subject of the contract.
This case was tried ore tenus and the court entered judgment in favor of Roy Smith. The written findings of fact indicate that the court found that the parties had indeed entered into an oral contract to exchange the lands in question, and that Roy Smith performed his obligation under the contract by conveying property to Ray Smith. The court made no findings, however, in regard to the possession of the land which is the subject of the specific performance. As mentioned above, possession is of crucial importance in removing a contract from the stricture of the Statute of Frauds.
The possession requirement of the "part performance exception" to the requirement of a writing in land sales contracts was addressed in Houston v. McClure, 425 So.2d 1114
(Ala. 1983). In that case, we reversed a summary judgment entered in a specific performance suit because there was a factual issue as to whether the acts of possession in the case were "referable exclusively to the contract."[1] This requirement is mentioned in Hagood v. Spinks, 219 Ala. 503, 122 So. 815
(1929), in which the Court said:
 To take a case out of the statute of frauds . . . upon the ground of part performance, the acts of possession must be clear and definite, and referable exclusively to the contract, and by authority of the vendor. The existence of the contract and its terms should be established by competent proof to be clear, definite, and unequivocal in all its terms. If its terms, or the necessary acts of part performance, are not sustained by satisfactory proof, specific performance will not be decreed. (Citations omitted.)
219 Ala. at 504, 122 So. at 816. The meaning of "referable exclusively to the contract" was discussed in Jones v. Jones, *Page 925 
219 Ala. 62, 121 So. 78 (1929). The Court stated as follows:
 The cases also hold that the possession of the purchaser must be exclusively referable to the contract . . . "that is to say, it must be such possession that an outsider, knowing all the circumstances attending it save only the one fact, the alleged oral contract, would naturally and reasonably infer that some contract existed relating to the land, of the same general nature as the contract alleged" (36 Cyc. 660). . . .
219 Ala. at 63-64, 121 So. at 78. The Jones Court went on to say that
. . . the possession must be referable to the promise and not to some domestic relationship of the vendor and vendee. 36 Cyc. 660, note 77. Where the person having the legal title to land is in possession, it is well established that such possession will be referred to the legal title. Here, the title being in the father, and both father and son being in possession, the law refers the possession to the father. (Citations omitted.)
219 Ala. at 64, 121 So. at 78. The Court went further in adopting the following excerpt:
 In 36 Cyc. 660, is the following: "If the possession * * * could be accounted for just as well by some other right or title actually existing in the vendee's favor, or by some relation between him and the vendor other than the alleged oral contract, it is not such a possession as the doctrine requires."
219 Ala. at 64, 121 So. at 79.
Additionally, in Knight v. Smith, 250 Ala. 113, 33 So.2d 242
(1948), it was restated that "our decisions are to the effect that possession must be of a notorious and exclusive character to bring the case within the exception of the Statute [of Frauds]." 250 Ala. at 114, 33 So.2d at 243. In Jones, supra, the Court said that "[i]n some jurisdictions joint possession suffices in cases of this character, while our decisions require the possession to be both notorious and exclusive."219 Ala. 64, 121 So. at 79. See also Krieger v. Krieger, 276 Ala. 466, 163 So.2d 623 (1964).
It is impossible to determine the reasoning of the trial court in granting specific performance to Roy, since there are no written findings of fact on the issue of possession. From a silent record we can only presume that the court either found that Roy's possession of the land in issue satisfied the part performance exception to the Statute of Frauds, or if not, that the court applied incorrect principles of law to the facts of this case in reaching its decision.
In Powers v. Board of Control of Judicial Retirement Fund,434 So.2d 745 (Ala. 1983), we stated this:
It is a well-settled principle that:
 In the absence of specific findings of fact by the trial court, this court will assume that the trial court made those findings necessary to support its judgment, unless such findings would be clearly erroneous and against the great weight and preponderance of the evidence. O'Connor v. Rabren, 373 So.2d 302 (Ala. 1979); Lipscomb v. Tucker, 294 Ala. 246, 314 So.2d 840 (1975).
Thomas v. Davis, 410 So.2d 889, 891 (Ala. 1982).
434 So.2d at 749. Having reviewed the record in this case, we conclude that the findings of fact on the issue of possession necessary to support the judgment of the trial court are clearly erroneous and against the great weight and preponderance of the evidence. Thus, the presumption of correctness given to factual findings based on ore tenus
evidence is overcome in this case. Alternatively, if the court did not apply the correct principles of law in this case, then the ore tenus rule is not even applicable. Under either rubric, the trial court committed reversible error.
Roy Smith's direct testimony indicates that after December 30, 1963, the date of the alleged oral contract, Roy measured the boundaries of the portion he now claims and "blazed" a line marking the boundary. He grazed cattle on the land *Page 926 
periodically, granted permission to third parties to hunt on the land, and cut timber on the land. Roy argues that these are acts of possession "referable exclusively" to the contract.
When asked on cross-examination how he had used the land in question prior to December 30, 1963, Roy testified that he farmed the land, cleared stumps, put in a temporary road, cleared a site for a lake, cut timber, maintained fences, "ran" cattle, and hunted on the land. Roy stated that "It is my half of it, and I used it just exactly as it was mine, because it is in fact, it just happens not to be in deed." R-41.
On further cross-examination, Roy was again asked to describe how he used the land after the date of the oral contract. He answered as follows:
 A. — that's what I'm coming to. I'm answering you. After 1963, my brother, Ray, I don't know just what year it was, went back in the service, but I farmed the Howard eighty, the ten or fifteen acres that was there. I maintained the fences. I used it just exactly like it was mine and looked after it and that's all I can respond. I had a vested interest, and I used it just like it was mine in fee simple terms. However, I used it also with the complete knowledge that half of it's my brother's and half of it mine.
R-49. Shortly thereafter, the following dialogue occurred:
 Q. I'm not asking you that. I'm asking you did you use it any differently after 1963 than you did prior to 1963?
 A. No, I used it just like it was my own all the time.
R-49.
In addition to this testimony, the evidence includes an affidavit signed by Roy Smith in 1976 for Union Oil prior to that company's leasing the mineral rights to the land. In the affidavit, Roy acknowledges that Ray Smith is the legal record owner of the land and goes on to say this:
 To the best of my knowledge, no land dispute, trespass or litigation ever threatened the peaceful possession of subject lands by their record owners at any time during the past 50 years, and in addition, all usage and possession has been open, exclusive, peaceful, continuous, hostile and adverse to the interests of any other possible claimant.
The extent and manner of Roy Smith's possession of the 80-acre tract of land in dispute, as reflected in the record, cannot be said to be "referable exclusively to the contract."Hagood, supra. We do not think that an outsider viewing the circumstances of Roy's possession would "naturally and reasonably infer that some contract existed relating to the land." Jones, supra. By his own admission, Roy Smith's manner of possession of the land was substantially the same before and
after the oral contract was made.
Moreover, considering the history of the land and the fact that the litigants are twin brothers, Roy Smith's possession could be viewed as referable to a "domestic relationship of the vendor and vendee," and not to a contract. Jones, supra. Since Roy's possession could be accounted for by a relationship between him and Ray other than contract, "it is not such a possession as the doctrine [of part performance] requires."Jones, supra.
Furthermore, the evidence indicates joint possession of the land in question by Roy and Ray. Since Ray has the legal title to the property, "possession will be referred to the [holder of] legal title" and not to Roy. Jones, supra. Joint possession defeats the part performance doctrine for the additional reason that Roy's possession is not "notorious and exclusive." Knight,supra.
Based upon the above-cited principles of law and the evidence in this case, we hold that the trial court either applied incorrect law or reached factual conclusions against the great weight and preponderance of the evidence. For this reason, we reverse that part of the decision of the trial court granting specific performance of the contract *Page 927 
and an accounting, and render judgment in favor of Ray Smith. We affirm that part of the judgment granting an easement to Ray Smith.
AFFIRMED IN PART; REVERSED IN PART AND JUDGMENT RENDERED FOR APPELLANT.
TORBERT, C.J., and FAULKNER, ALMON and EMBRY, JJ., concur.
[1] In a more recent decision, Houston v. McClure, 456 So.2d 788
(Ala. 1984), we affirmed the trial court's finding on remand that the part performance exception to the Statute of Frauds was met.
[EDITORS' NOTE: APPENDIX IS ELECTRONICALLY NON-TRANSFERRABLE.] *Page 928