This is an appeal from a summary judgment in favor of The Travelers Insurance Company ("The Travelers") as to Count I of J.W. Casey's complaint alleging breach of contract. The judgment was made final pursuant to rule 54(b), A.R.Civ.P. Count I[1] of Casey's complaint alleged that the written loan agreements between the parties had been modified by an oral agreement of September 28, 1983, and ratified by the parties' course of dealing. Casey filed suit on June 26, 1986, against The Travelers. In his complaint, he alleged that The Travelers' agent had orally promised to release the real property mortgaged to the company upon certain conditions, that the company had breached this contract by denying his requests for partial releases in 1982 and 1985, and that this had caused him to have to declare bankruptcy.
The Travelers filed a motion for summary judgment as to Count I, contending that that count was barred as a matter of law by the Statute of Frauds and the statute of limitations. The trial court entered a summary judgment for The Travelers on that count. Casey appeals. We affirm.
The facts show that between 1974 and 1982 Casey entered into seven loan agreements with The Travelers in order to finance his purchases of timber land. As security for the loans, Casey executed mortgages on timber property located in Butler, Crenshaw, Lowndes, Montgomery, Elmore, Coosa, and Macon Counties, and on his farm and homestead. The amounts borrowed by Casey ranged from $125,000 to $2.3 million.
After Casey mortgaged his property, the value of the land declined. In 1982, Casey requested a partial release of 40 acres of land in Butler County. Casey offered to pay The Travelers $500 per acre of land released. Casey alleges that in a telephone conversation with Dale Morrison, agent of The Travelers, Morrison agreed to release the land. However, in a letter to Casey dated November 27, 1984, Morrison stated:
 "I have reviewed our position on this loan and we will not be able to release the 40 acres you wrote me about in your letter of November 20, 1984. The size and the acres of cultivated land that would remain after the release would be considerably less than our minimum size for an economic unit."
The second denial of a requested partial release pertained to land located in Crenshaw County that Casey had purchased in 1980. Morrison had retired from The Travelers at the time this denial took place. Casey offered The Travelers $700 per acre in exchange for a release of 100 acres of property covered by the 1980 agreement, and the company denied his request.
The issue before the Court is whether the trial judge erred in entering the summary judgment for The Travelers. Rule 56, A.R.Civ.P., sets forth a two-tiered standard for determining whether to enter a summary judgment. In order to enter a summary judgment, the trial court must determine: 1) that there is no genuine issue of material fact, and 2) that the moving party is entitled to a judgment as a matter of law. The standard for making that determination, as applied to the defense of the Statute of Frauds, is as follows:
 " '[E]ven though [the] plaintiff may produce [evidence of] a genuine issue of *Page 1363 
material fact [on matters such as the terms or existence of a contract], if the other side makes out a prima facie case under a special plea of the affirmative defenses of the Statute of Frauds, or the statute of limitations, it is incumbent upon the opposite party to come forward with at least a scintilla of proof that these defenses do not apply to him. Otherwise, summary judgment is appropriate. Thompson v. Wilson, 474 So.2d 657, 660
(Ala. 1985).' "
Durham v. Harbin, 530 So.2d 208, 210 (Ala. 1988). Therefore, our task is to determine whether, under the applicable law, a scintilla of evidence supports Casey's position.[2]
We first consider whether the trial court erred in entering The Travelers' summary judgment on the grounds that any oral agreement of the parties as to the release of the real property would be void under the Statute of Frauds because it was not "subscribed by the party to be charged." Alabama Code 1975, § 8-9-2.
The Statute of Frauds is codified at § 8-9-2, Code 1975, and provides in pertinent part as follows:
"Certain agreements void unless in writing.
 "In the following cases, every agreement is void unless such agreement or some note or memorandum thereof expressing the consideration is in writing and subscribed by the party to be charged therewith or some other person by him thereunto lawfully authorized in writing:
". . . .
 "(5) Every contract for the sale of lands, tenements or hereditaments, or of any interest therein, except leases for a term not longer than one year, unless the purchase money or a portion thereof, is paid and the purchaser is put in possession of the land by the seller."
The Statute of Frauds prevents enforcement of an oral agreement concerning the sale of land, even though both parties may acknowledge the existence of the agreement. Smith v. Smith,466 So.2d 922, 924 (Ala. 1985).
The issue in this case is the release of land, not the sale thereof. However, it is clear that an agreement to release lands from the effect of a mortgage is an agreement for the transfer of real property and thus falls within the Statute of Frauds. This Court has made it clear that an oral contract to give a mortgage to secure a debt would be void. Pattillo v.Tucker, 216 Ala. 572, 113 So. 1 (1927). We have also held that after the execution of a mortgage, the mortgage cannot be extended by parol agreement to secure debts or obligations other than those that were secured in the original writing.Weatherwax v. Heflin, 244 Ala. 210, 12 So.2d 554 (1943). The converse would also be true. An oral agreement to release those lands subject to a written mortgage would have to be in writing. McCoy v. Wynn, 215 Ala. 172, 110 So. 129 (1926).
According to Osborne, Mortgages, § 68, p. 103 (1951), an agreement to relinquish real property secured by a mortgage obligation is within the Statute of Frauds. The Supreme Judicial Court of Massachusetts has held that oral agreements for the partial release of real estate mortgages are not enforceable because of the Statute of Frauds:
 "Any oral agreement by the bank for partial releases in the negotiations that preceded the mortgages was not enforceable, for it was 'a contract for the sale of lands, tenements, or hereditaments' or some 'interest in or concerning them' [subject to the Statute of Frauds]."
Duff v. United States Trust Co., 327 Mass. 17, 97 N.E.2d 189
(1951). On the authority of the cases cited above and the Statute of Frauds, we hold that any oral agreements of the parties for the partial release of mortgages are void under §8-9-2.
Casey next argues that the Statute of Frauds should not prevent the enforcement of the alleged oral agreement, because, he says, there was a "history of *Page 1364 
partial performance of the oral contract whereby the defendant entered into a series of partial releases of mortgaged property in accordance with the terms of the oral contract." InDarby v. Johnson, 477 So.2d 322 (Ala. 1985), this Court described the part performance exception:
 "In summary then, the part performance exception is generally the only exception to the Statute of Frauds in regard to oral contracts concerning real property. To withdraw an oral contract from the Statute, one must pay some or all of the purchase price and be put in possession of the land by the seller. However, the cases instruct us that equity may intervene even though the part performance requirement is not met, when fraud operates from the beginning — that is, when the breaching party procured the land or purchase money with no intent to perform the oral agreement admitted to have been made. The cases further require that this fraud be clearly shown. Equity will not intervene when the party merely refuses to perform. To do so would render the Statute of Frauds a nullity in that the Statute is usually raised only when one of the parties breaches the oral agreement. Also, to enforce an oral contract against a party merely because he or she admitted to its existence and substance, against his or her own interest, is likely to promote perjury. Instead of admitting to the contract, the breaching party would be tempted to deny the agreement in order to escape liability."
Id. at 326-27.
The record in this case reflects that while partial releases had been executed with regard to several of Casey's loan transactions, these were within the terms of the loan agreements between the parties that gave the discretion to The Travelers to determine when releases should be given. The mortgage agreements of the parties contained the following provisions concerning partial or whole releases:
 "10. The Mortgagee, at the request of the mortgagor, may from time to time and without notice execute and deliver partial releases of any part of the premises from the lien of this mortgage without affecting either the personal liability of any person liable for the payment of said note, or the lien of this mortgage upon the remainder of the premises for the full amount of the note then remaining unpaid. The rights of any subsequent purchaser, junior lienholder or any other person or corporation in all or any part of the premises shall be subject to such right of the Mortgagee to execute and deliver such partial releases as aforesaid.
". . . .
 "21. In the event the Mortgagor should convey the within described lands, or any part thereof, whether by Warranty Deed, Bond for Title, Contract for a Deed or similar instrument, prior to payment in full of the indebtedness secured hereby, or any renewal or extension thereof, the Mortgagee, at its option, either forthwith or at any time prior to payment in full of the said indebtedness, may declare immediately due and payable any part of the unpaid balance, not to exceed (50%) per centum thereof."
There was no partial performance with regard to the release requests that form the subject of this litigation. Furthermore, the evidence reflects that Casey did not fall within the requirements of the partial performance exception that he "pay some or all of the purchase price and be put in possession of the land by the seller." Darby v. Johnson, supra.
Finally, Casey contends that the The Travelers is estopped from raising the Statute of Frauds because, he says, the company fraudulently induced him to borrow money from the company upon the oral representations of Dale Morrison. This Court has said that "the fraud required to make this showing must be 'inherent fraud — that is, an intention not to perform operating from the inception of the transaction,' Darby, at 327, and a mere refusal to perform a promised act is insufficient evidence of such inherent fraud to allow equity's intervention, see Darby at 326." Durham v. Harbin,530 So.2d 208, 212 (Ala. 1988). We have carefully *Page 1365 
searched the record and find that there was no evidence of an intention not to perform operating from the inception of the transactions.
For the reasons stated above, The Travelers' summary judgment on the breach of contract claim is due to be affirmed.
AFFIRMED.
HORNSBY, C.J., and MADDOX, HOUSTON and STEAGALL, JJ., concur.
[1] A motion for summary judgment as to Count II had been previously dismissed. Summary judgment was granted as to Count III on April 15, 1987, and affirmed on appeal to this Court inCasey v. Travelers Insurance Co., 531 So.2d 846 (Ala. 1988). A motion for summary judgment was also filed as to Counts IV and V, but it was denied by the trial court.
[2] This case was pending on June 11, 1987, and thus is governed by the "scintilla rule" rather than the "substantial evidence rule." See § 12-21-12, Alabama Code 1975.