852 So.2d 691 (2002)
Danita Kim HOLMAN and D. Mark Holman
v.
CHILDERSBURG BANCORPORATION, INC., et al.
1011756.
Supreme Court of Alabama.
December 6, 2002.
*692 Phillip A. Gibson, Huntsville, for appellants.
Bruce F. Rogers and James W. Davis of Bainbridge, Mims, Rogers & Smith, *693 L.L.P., Birmingham, for appellee Childersburg Bancorporation, Inc.
Richard F. Ogle and Robert B. Stewart of Ogle, Liles & Upshaw, L.L.P., Birmingham; and B. Clark Carpenter, Jr, of Wooten, Thornton, Carpenter, O'Brien, Lazenby & Lawrence, Talladega, for appellee First Bank of Childersburg.
Gerald L. Miller of Redden, Mills & Clark, Birmingham, for appellee Byron Louie Henry.
WOODALL, Justice.
Danita Kim Holman and her husband, D. Mark Holman, appeal from a summary judgment in favor of First Bank of Childersburg ("the Bank"), Childersburg Bancorporation, Inc. ("the Corporation"), and Byron Louie Henry, an officer of the Bank at the time of the underlying transaction, in the Holmans' action alleging breach of an agreement to release a tract of land from a mortgage lien. We affirm.
Events material to this dispute began in 1995, when the Holmans borrowed $275,000 from the Bank in connection with the purchase of approximately 16 acres of real property. The loan was secured by a mortgage on that property. Subsequently, the original 16-acre tract was subdivided into three tractstract I, tract II, and tract III. The Holmans allege in their complaint that in 1997 they and Henry reached an oral agreement regarding the disposition of some of the property. Under the alleged agreement, the Holmans would sell tract I. The parties agree that a portion of the sale proceeds were to be paid to the Bank to satisfy the mortgage on tract I. The Holmans allege that the Bank also agreedin exchange for $175,000 of the purchase price of tract Ito execute an instrument releasing tract II from the mortgage lien, to enable the Holmans to obtain a construction loan to build a residence on tract II "when the time came that [the Holmans] wanted to build the house."
In May 1997, tract I was sold, and the Holmans paid the Bank $175,000. On May 7, 1997, the Bank executed a "Partial Release," releasing tract I from the mortgage lien. Subsequently, the Holmans began constructing a house on tract II. However, title searches conducted on or about July 2, 1998, December 11, 1998, and July 25, 2000, revealed to the Holmans that, as of the last date, no mortgage release had been recorded as to tract II. The Holmans allege that, as of December 11, 2000, the date the Holmans filed this action, the defendants were disclaiming any knowledge of an oral agreement to release tract II from the mortgage lien.
On December 11, 2000, the Holmans sued Henry and the Corporation. Their complaint, as eventually amended to include the Bank (the Corporation, the Bank, and Henry are hereinafter referred to collectively as "the defendants"), contained counts alleging (1) breach of a contract to release tract II from the mortgage lien, (2) negligence/wantonness, (3) fraudulent misrepresentation, (4) fraudulent suppression, (5) slander of title, and (6) civil conspiracy. A seventh count, added by amendment, was against the Corporation and the Bank for negligent hiring, training, and supervision of Henry. The complaint alleged that the property had been devalued and depreciated by the acts of the defendants. The complaint sought compensatory and punitive damages.
The defendants answered the last amended complaint, asserting affirmative defenses, including the Statute of Frauds. The Bank counterclaimed against the Holmans for amounts allegedly due on their notes with the Bank. Subsequently, the defendants moved for a summary judgment.
*694 On November 2, 2001, the trial court entered a summary judgment for the defendants on various grounds. More specifically, it concluded that the breach-of-contract claims were barred by the Statute of Frauds and that the tort claims were barred by the applicable statutes of limitations. On May 7, 2002, the trial court, on the Bank's motion, dismissed the Bank's counterclaims against the Holmans.
From that judgment, which constituted the final disposition of all the claims asserted in this action, the Holmans appealed. On appeal, the Holmans argue, among other things, that the trial court erred in holding (1) that the Statute of Frauds barred the breach-of-contract claims, and (2) that the statutes of limitations barred the tort claims.

I. Breach-of-Contract Claims
The Holmans set forth their breach-of-contract claims in the following terms:
"22. After Plaintiffs and defendants... entered into the agreements set forth above, [regarding the sale of tract I, and the payment of $175,000 of the purchase price in exchange for the Bank's agreement to release tract II], Plaintiffs placed ... tract One on the market for sale. After [tract I] sold, Plaintiffs and said defendants negotiated and agreed on a release price for both parcels, with the understanding that no further consideration would be required from Plaintiffs to release Tract Two from the Mortgage. This agreement was made so that Plaintiffs could obtain a construction loan and begin construction of their new residence.
"....
"... Pursuant to the agreement, the parties negotiated a release price including the amount necessary to release Tract One from the Mortgage as well as the release of Tract Two without any further consideration. Plaintiffs paid said defendants the sum of .... $175,000.00 ... from the sale proceeds resulting from the sale of Tract One.
"....
"26. Pursuant to the agreement entered into by the parties, and at defendants' request, [a] partial Mortgage [release was] sent to the Bank in regard to... Tract Two. Said partial Mortgage [release was] either signed but not recorded, lost, misplaced, or willfully disregarded; but in any event, [was] never recorded in the Probate Office of Madison County, Alabama.
"27. As a result of the aforesaid actions, defendants ... breached the agreement entered into between the parties by failing or refusing to release ... Tract Two from the Mortgage.

"....
"29. As a direct consequence of defendants'... breach of the aforesaid agreements, Plaintiffs, DANITA KIM HOLMAN and D. MARK HOLMAN, are greatly restricted in the free enjoyment, use and disposition of their property; the property has been greatly devalued and depreciated; Plaintiffs have been unable to refinance the property without being forced to pay the unreasonable, arbitrary and capricious amount demanded by said defendants; [and] Plaintiffs have been exposed to liability to other parties now holding Mortgages against the property....
"WHEREFORE, Plaintiffs demand judgment against each of the defendants.... jointly and severally, in a sum to be determined by a jury, which will fairly and adequately compensate Plaintiffs for their injuries and damages sustained...."
(Emphasis added.) The defendants contend that the Statute of Frauds bars these claims.
*695 Alabama's Statute of Frauds provides, in pertinent part:
"In the following cases, every agreement is void unless such agreement or some note or memorandum thereof expressing the consideration is in writing and subscribed by the party to be charged therewith or some other person by him thereunto lawfully authorized in writing:
"....
"(5) Every contract for the sale of lands, tenements or hereditaments, or of any interest therein, ... unless the purchase money, or a portion thereof is paid and the purchaser is put in possession of the land by the seller...."
Ala.Code 1975, § 8-9-2(5). This section "requires that all contracts for the sale of real property be in writing and be signed by the party against whom the contract is asserted. The writing must also contain a recital of the consideration supporting the contract." Pickard v. Turner, 592 So.2d 1016, 1020 (Ala.1992). "[I]t is clear that an agreement to release lands from the effect of a mortgage is an agreement for the transfer of real property and thus falls within the Statute of Frauds." Casey v. Travelers Ins. Co., 585 So.2d 1361, 1363 (Ala.1991).
The Holmans do not dispute that the alleged agreement is subject to the Statute of Frauds. They contend, however, that they have sufficiently established that a release, or a commemorative writing, exists.

A. Evidence of an Agreement
In this connection, the Holmans submitted the affidavit of Dennis Abbott, their former legal counsel. Abbott stated, in pertinent part:
"On or about August 29, 1997, I was contacted by the [Holmans] to close a construction loan on [tract II]. I was told by the [Holmans] that there was no payoff amount for this tract and that they had previously entered into an agreement with [the Bank] to the effect that if they sold [tract I] and their personal residence and paid [the Bank] certain agreed upon amounts, the Bank would, in turn, release [tract II], with no additional consideration so that the [Holmans] could obtain a construction loan. On or about August 29,1997, I contacted Louie Henry to confirm the payoff amount and/or release agreement. Mr. Henry informed me that the Bank had, in fact, agreed to release [tract II] with no additional consideration. He acknowledged to me that he was aware that the Holmans were going to build a house on that tract and that the Bank had entered into an agreement several months prior thereto that it would release [tract II] for no additional consideration conditioned on the sale of [tract I] and the payment of $175,000.00 to the Bank.... I informed Mr. Henry that a title search revealed that [tract II] had not been released. He advised me to prepare a partial mortgage release and send it to him and that he would execute it and file it of record. Based on these representations, I closed the construction loan on the property and mailed the partial mortgage release to Mr. Henry.
"On or about July 2, 1998, I was again contacted by the [Holmans] to close a second mortgage on [tract II] to enable [them] to complete construction of their residence. Title work done at that time revealed that [tract II] had still not been released from the original mortgage to [the Bank]. I contacted [the Bank] at that time and received assurances that the failure to release the property was merely an oversight and that if a partial mortgage release was again sent to the Bank, it would be executed and filed of *696 record. Based on these representations, I closed the second mortgage on [tract II] and mailed another partial mortgage release to [the Bank].
"On or about December 11, 1998, I was again contacted by the [Holmans] to close a second mortgage on [tract II]. The prior second mortgage was to be paid off and additional funds were being borrowed by the [Holmans]. Title work performed at the time revealed the existing second mortgage and also revealed that [the Bank] had still not released [tract II] from the original mortgage. I obtained a payoff on the existing second mortgage and contacted [the Bank] concerning its failure to release [tract II] as agreed. I again received assurances from the Bank that the failure to release the property was merely an oversight and that if I would send yet another partial mortgage release, it would be executed and filed for record. To the best of my knowledge and belief, I insisted that a partial mortgage release be faxed to the Bank and that the release be signed and faxed back to me for my file so that I could be assured at that time that the mortgage would be released. To the best of my knowledge, this was done and an executed copy of the partial mortgage release was faxed to my office. Based on the repeated assurances from [the Bank], the transaction was closed with a check being sent to pay off the existing second mortgage holder and an original partial mortgage release being sent to [the Bank] for execution and recordation.
"I had no other dealings with the [Holmans'] property until on or about July 25, 2000. The [Holmans] contacted me and informed me that the second mortgage was being refinanced and that title work done by another attorney revealed that [tract II] had never been released from the original ... mortgage. Subsequently, I contacted [the Bank] and was advised that Louie Henry no longer worked for the Bank. I talked with another bank official and was advised that the Bank was not in a position to execute and file a release....
"On or about August 1, 2000, I talked with Louie Henry by telephone. The only property we discussed was [tract II] where the [Holmans'] residence was located. Henry assured me at that time that the Bank had agreed to release [tract II] from the original mortgage and that, in his best judgment, he had actually signed the partial mortgage release. He further stated that he did not know why the release had not been recorded or why the Bank was now refusing to release the property."
The Holmans contend that this affidavit, "at the very least, establishes an issue of fact regarding the existence of the [Bank's] release of the subject property." Holmans' Brief, at 21. They argue, in other words, that the defendants have admitted to an agreement to execute and record a release, and that, therefore, they are estopped to deny its existence. We disagree with this contention.
To be sure, "a party may be equitably estopped to raise the Statute of Frauds as a defense under certain limited circumstances." Pate v. Billy Boyd Realty & Constr., Inc., 699 So.2d 186, 192 (Ala.Civ. App.1997). However, this Court "has made clear that a party cannot create an `estoppel bar to raising the Statute of Frauds merely because a party admits, either judicially or extrajudicially, the existence of or the substance of an oral contract within the Statute.'" Rice v. Barnes, 149 F.Supp.2d 1297, 1302 (M.D.Ala.2001) (emphasis added) (quoting Pate, 699 So.2d at 192). This is so, because *697 "to enforce an oral contract against a party merely because he or she admitted to its existence and substance ... is likely to promote perjury. Instead of admitting to the contract, the breaching party would be tempted to deny the agreement in order to escape liability." Darby v. Johnson, 477 So.2d 322, 327 (Ala.1985); see also Durham v. Harbin, 530 So.2d 208, 212-13 (Ala.1988).
Despite the statements in Abbott's affidavit, neither an original nor a copy of the partial release relating to tract II has surfaced in this action. Neither has any writing evidencing the alleged agreement between the Bank and the Holmans for the release of tract II in exchange for $175,000 of the sales price of tract I been produced. Moreover, to the extent that Henry's alleged assurances regarding the understandings of the parties constitute "admissions," they do not, as a matter of law, create a bar to the operation of the Statute of Frauds.
The Holmans next contend that the Statute of Frauds does not bar their action, because, they insist, they have "met the partial performance exception requirements to the Statute of Frauds." Holmans' Brief, at 24. We also disagree with this contention.

B. Partial Performance
Section 8-9-2(5) expressly excepts from its operation purchasers who pay "the purchase money, or a portion thereof," and who are consequently "put in possession of the land by the seller." (Emphasis added.) Construing the predecessor to § 8-9-2, this Court has stated:
"Unless the facts bring the case within one of the statutory exceptions, if the parol agreement between the two parties for the purchase of real estate from a third person `involves a purchase by, or in the name of, one party and a subsequent transfer, conveyance, or vesting of an interest in the property to or in the other party, the statute of frauds applies.' 37 C.J.S., Frauds, Statute of, § 119, subsec. b, p. 614.
"If, however, the contract has been fully performed, by the seller putting the purchaser in possession under the contract and the purchaser paying the seller a part or all of the purchase price, the contract is valid and is saved by the exception."
Talley v. Talley, 248 Ala. 84, 87, 26 So.2d 586, 589 (1946). Although this Court has suggested that the exception would apply to oral agreements to release realty from a mortgage lien, see Casey v. Travelers Ins. Co., 585 So.2d 1361, 1364 (Ala.1991), the Holmans have not met the "possession" requirement.
In that connection, this Court explained:
"The possession requirement of the `part performance exception' to the requirement of a writing in land sales contracts was addressed in Houston v. McClure, 425 So.2d 1114 (Ala.1983). In that case, we reversed a summary judgment entered in a specific performance suit because there was a factual issue as to whether the acts of possession in the case were `referable exclusively to the contract.' This requirement is mentioned in Hagood v. Spinks, 219 Ala. 503, 122 So. 815 (1929), in which the Court said:
"`To take a case out of the statute of frauds ... upon the ground of part performance, the acts of possession must be clear and definite, and referable exclusively to the contract, and by authority of the vendor. The existence of the contract and its terms should be established by competent proof to be clear, definite, and unequivocal *698 in all its terms. If its terms, or the necessary acts of part performance, are not sustained by satisfactory proof, specific performance will not be decreed.' (Citations omitted [in Smith].)

"219 Ala. at 504, 122 So. at 816. The meaning of `referable exclusively to the contract' was discussed in Jones v. Jones, 219 Ala. 62, 121 So. 78 (1929). The Court stated as follows:
"`The cases also hold that the possession of the purchaser must be exclusively referable to the contract ... "that is to say, it must be such possession that an outsider, knowing all the circumstances attending it save only the one fact, the alleged oral contract, would naturally and reasonably infer that some contract existed relating to the land, of the same general nature as the contract alleged" (36 Cyc. 660)....'
"219 Ala. at 63-64, 121 So. at 78. The Jones Court went on to say that
"`... the possession must be referable to the promise and not to some domestic relationship of the vendor and vendee. 36 Cyc. 660, note 77. Where the person having the legal title to land is in possession, it is well established that such possession will be referred to the legal title. Here, the title being in the father, and both father and son being in possession, the law refers the possession to the father.' (Citations omitted [in Smith].)

"219 Ala. at 64, 121 So. at 78. The Court went further in adopting the following excerpt:
"`In 36 Cyc. 660, is the following: "If the possession * * * could be accounted for just as well by some other right or title actually existing in the vendee's favor, or by some relation between him and the vendor other than the alleged oral contract, it is not such a possession as the doctrine requires.'"
Smith v. Smith, 466 So.2d 922, 924-25 (Ala.1985) (emphasis added; footnote omitted). Elsewhere, this Court explained that "`"[t]he acts of part performance must... be such as would not be done but for the [alleged oral contract]."'"Quinlivan v. Quinlivan, 269 Ala. 642, 645, 114 So.2d 838, 840 (1959) (emphasis added) (quoting Gibson v. Bryant, 267 Ala. 97, 99, 100 So.2d 32, 34 (1958)). The exception applies only where "`"the acts of part performance cannot be explained consistently with any other contract than the one alleged."'" 269 Ala. at 645, 114 So.2d at 840 (quoting Gibson, 267 Ala. at 99, 100 So.2d at 34) (emphasis added).
It is clear from the discussion in Smith that the part-performance exception cannot apply in this case. This is so because the Holmans were never out of possession of tract II at any relevant time. On the contrary, they have been in exclusive possession of tract II since 1995, the date they purchased of the original 16-acre undivided parcel. In other words, they were in possession of tract II for approximately two years before it was created from the larger parcel, and for two years before it became the subject of an alleged oral agreement. See Talley v. Talley, 248 Ala. 84, 88, 26 So.2d 586, 589 (1946) ("payment and possession must concur to save the purchase from the grasp of the statute"). Clearly, the Holmans were not put in possession of tract II by the alleged oral agreement.
Relying on the rule expressed in Smith, the Bank contends:
"Contrary to the [Holmans'] contentions, [their] possession of [tract II], the... construction of their home thereon, and [the Bank's] consent thereto is not *699 adverse to [the Bank's] mortgage on the subject property, and the [Holmans'] possession of the property, and construction of their home thereon, is certainly not referable exclusively to the alleged oral contract to release the subject property from [the Bank's] mortgage. Simply stated, an outsider who observed the [Holmans'] possession of the property and the construction of a home thereon with [the Bank's] consent, would not `naturally and reasonably infer' that [the Bank] had agreed to release the subject real property from its mortgage thereon."
Brief of First Bank of Childersburg, at 19.
We agree with this contention. The Holmans' construction of a residence on land to which they undisputedly had legal and physical possession would not inevitably lead an "outsider" to conclude that the alleged oral contract existed. The facts of this case clearly fail to satisfy the part performance requirement. Consequently, the trial court did not err in holding that the Statute of Frauds barred the breach-of-contract claims.

II. Tort Claims
The Holmans also contend that the trial court erred in holding that the applicable statutes of limitations barred their negligence/wantonness and other tort claims. The Bank, on the other hand, argues that the negligence/wantonness claims are also barred by the Statute of Frauds. More specifically, it states:
"There is not much left to say about [the negligence/wantonness claims], because the result is dictated by our argument as to [the breach-of-contract claims]. The only duty alleged ... in this case is predicated upon an alleged contractual duty to release land from a mortgage; thus, the [Holmans'] claims of negligence are actually claims arising in contract."
Brief of First Bank of Childersburg, at 21 (emphasis added). We agree that the Statute of Frauds also bars the negligence/wantonness claims. Indeed, it is this alleged duty, and the breach thereof, that underlies all the tort claims.
As a general rule, "[i]f the proof of a promise or contract, void under the statute of frauds, is essential to maintain the action, there may be no recovery." Pacurib v. Villacruz, 183 Misc.2d 850, 861, 705 N.Y.S.2d 819, 827 (N.Y.Civ.Ct.1999) (emphasis added); see also Dwight v. Tobin, 947 F.2d 455, 460 (11th Cir.1991); McDabco, Inc. v. Chet Adams Co., 548 F.Supp. 456, 458 (D.S.C.1982) (it is a "well accepted doctrine that one cannot circumvent the Statute of Frauds by bringing an action in tort, when the tort action is based primarily on the unenforceable contract"); Weakly v. East, 900 S.W.2d 755 (Tex.Ct. App.1995). This is so, because, "[i]f a plaintiff was allowed to recover the benefit of a bargain already barred by the statute of frauds, the statute of frauds would become meaningless." Sonnichsen v. Baylor University, 47 S.W.3d 122, 127 (Tex.Ct. App.2001). "Thus, the statute of frauds bars a [tort] claim when a plaintiff claims as damages the benefit of the bargain that he would have obtained had the promise been performed." Id. (emphasis added).
This Court has not expressly applied or rejected the general rule. See Jamison, Money, Farmer & Co. v. Standeffer, 678 So.2d 1061, 1068 (Ala.1996)(professional liability action) (Houston, J., concurring in the result). Standeffer was a plurality opinion, authored by Justice Ingram, with three Justices concurring in the opinion and Justice Houston concurring in the result. The plurality suggested that the effect of the Statute of Frauds might be limited strictly to claims actually styled as breach-of-contract claims. Id. at 1066.
*700 In his special concurrence, Justice Houston reasoned that the duty arose out of the accountant-client relationship of the parties, rather than out of a contractual promise. Id. at 1068. Thus, he explained, the Statute of Frauds did not apply. Moreover, he cautioned:
"I would not hold that a duty created by contract would not be subject to a Statute of Frauds defense in a negligence action based upon a breach of that duty.... I have found no Alabama case that addresses this issue, and I would wait to address this issue until it is necessary."
678 So.2d at 1069.
The issue is squarely presented in this case. The Holmans' recoverywhether under the breach-of-contract theory or under any of the tort theoriesturns on the existence of an oral promise to record a release as to tract II, the proof of which is barred by the Statute of Frauds. This conclusion is illustrated by brief analyses of the allegations and arguments underlying the Holmans' various tort claims, with reference to the allegations of the breach-of-contract claims.

A. Negligence/Wantonness
The basis for the Holmans' negligence/wantonness claims is that the defendants "had a duty to execute the appropriate documents and to take the necessary steps and action required to sign, file and/or record said documents in an effort to finalize and complete the agreements made between the parties," and that they "breached said duty by negligently and/or wantonly failing to sign, file and/or record the appropriate documents necessary to release Tract Two." (Emphasis added.) As a result, the Holmans allege, they "are greatly restricted in the free enjoyment, use and disposition of their property." They also allege that "the property has been greatly devalued and depreciated," and that they "have been unable to refinance the property without being forced to pay the unreasonable, arbitrary and capricious amount demanded by [the] defendants."[1] Otherwise stated, the Holmans' argument is that the "duty" the defendants owed was to honor the alleged oral agreement to release Tract II, and the only "breach" was their failure to honor that agreement. In that connection, the Holmans argue that the defendants'"negligent and wanton conduct" consisted of their "refus[al] to provide a mortgage release of the subject Tract II." Holmans' Brief, at 31. Clearly, proof of the existence of the alleged oral agreement "is essential," Pacurib, 183 Misc. at 861, 705 N.Y.S.2d at 827, to their negligence/wantonness claims. If the Bank did not promise to release tract II, it owed no duty to do so.

B. Fraud
Counts three and four purported to allege claims of fraud. In count three, the Holmans alleged that the defendants "represented to [them] ... that defendants had agreed to release.... Tract Two from the Mortgage, and that defendants would execute a partial mortgage release ... so that [the Holmans] could obtain a construction mortgage to build a house thereon." These representations, the Holmans allege, "were false, and [the Holmans] relied on said representations to their detriment." Similarly, count four alleged that the defendants "knew at the time of contracting with the [Holmans], and at different stages throughout the life *701 of the contract, that ... Tract Two [was] not and/or [was] never intended to be released from the Mortgage." (Emphasis added.) "These facts were material," the Holmans alleged, "and defendants had an obligation to disclose said facts to [the Holmans]." Counts three and four alleged damages in terms identical to those alleged in counts one and two. The Holmans also argue:
"The facts of the instant case clearly reveal that the [Holmans] fully expected the Defendants to file the release for the two acre parcel upon which they built their home. It was not until July/August 2000 that they began to believe that the Defendants had misrepresented or suppressed facts to them concerning the release and that the Defendants had no intention of performing on their agreement to release [tract II]."
Holmans' Brief, at 33.
Unless the Bank had, in fact, promised, as the Holmans alleged in count one, to release tract II upon payment of $175,000, there could be no misrepresentation or fraudulent concealment, as alleged in counts three and four. Thus, here, the facts underlying the fraud claims merely duplicate those underlying the breach-of-contract claims.[2]

C. Slander of Title
Count five alleged slander of title. In this count, the Holmans aver that the defendants have continued to claim some interest in tract II, "when [they] are not entitled to any right, title and/or interest whatever." In this connection, the Holmans also argue: "As argued above, the conduct of the Defendants resulted in an injury to the Holmans in July/August 2000 when they refused to file the mortgage release as promised earlier by the Defendants." Holmans' Brief, at 34.
The gravamen of this claim is that the defendants lost their interest in tract II through the alleged oral agreement to release the property, but that they nevertheless continued to claim an interest, thereby disparaging the Holmans' title. Once again, the existence of the oral agreement is an essential element of this tort claim. However, the Statute of Frauds bars proof of that alleged agreement.

D. Negligent Hiring and Supervision
Count seven alleges that Byron Louie Henry "negligently and/or wantonly fail[ed] to sign, file and/or record the appropriate documents necessary to release Tract Two." The complaint avers that this failure was the result of the Bank's negligent hiring, training, and supervision of Henry. It is undisputed that, absent the alleged oral agreement, neither Henry nor the Bank had a duty to "sign, file and/or record the appropriate documents necessary to release Tract Two." Therefore, the validity of this count also turns on the existence of an oral agreement that is subject to the Statute of Frauds.

III. Summary
In accord with the general rule, we hold that where, as here, an element of a tort claim turns on the existence of an alleged agreement that cannot, consistent with the Statute of Frauds, be proved to support a breach-of-contract claim, the Statute of Frauds also bars proof of that agreement to support the tort claim. Were the rule otherwise, the Statute of Frauds could be effectively avoided by the simple wording of the complaint.
*702 The Holmans' tort claims all turn on proof of an alleged oral promise to release real estate from a mortgage lien.[3] Because proof of such a promise is barred by the Statute of Frauds for purposes of the breach-of-contract claims, the tort claims also fail as a matter of law. Summary judgment was properly entered for the defendants. That judgment is therefore affirmed.[4]
AFFIRMED.
MOORE, C.J., and HOUSTON, SEE, LYONS, BROWN, HARWOOD, and STUART, JJ., concur.
JOHNSTONE, J., concurs in the rationale in part and concurs in the judgment.
JOHNSTONE, Justice (concurring in the rationale in part and concurring in the judgment).
But for two exceptions, I concur in the rationale. Because the exceptions do not affect the result, I also concur in the judgment.
My first exception to the rationale is that the main opinion misses the point of the Holmans' very first argument. Their first argument is that enforcement of the agreement by the Bank to release the mortgage on tract II is not barred by the Statute of Frauds, § 8-9-2(5), Ala.Code 1975, since the agreement is, in fact, "in writing and subscribed by the party to be charged therewith" as required by that statute and that, because this writing has been lost or destroyed, it may be proved by secondary evidence consisting of the affidavit of the Holmans' former lawyer Dennis Abbott. The Holmans aptly cite Rule 1004(1), Ala. R. Evid., which allows proof of lost or destroyed documents by secondary evidence. The reason the Holmans' argument to this effect fails is that the particular secondary evidence they have submitted does not constitute substantial evidence of the fact they seek to provethe existence of a writing memorializing the agreement.
The statements in the Abbott affidavit that most tend to prove the existence of such a writing read:
"To the best of my knowledge and belief, I insisted that a partial mortgage release be faxed to the Bank and that the release be signed and faxed back to me for my file so that I could be assured at that time that the mortgage would be released. To the best of my knowledge, this was done and an executed copy of the partial mortgage release was faxed to my office." (Emphasis added.)
The affiant's qualifying his statements by saying that they are to the best of his knowledge and belief, or to the best of his knowledge, deprives them of the probative value essential to constitute substantial evidence in opposition to the motion for summary judgment. Florence Bldg. & Inv. Ass'n v. Schall, 107 Ala. 531, 534, 18 So. 108, 109 (1894) ("[T]hey deposed merely that it was correct and true `to the best of their knowledge and belief.' We held, in Globe Iron & Roofing & Corrugating Co. v. Thatcher, 87 Ala. 458, [6 So. 366 (1888) ], that an affidavit of this character, made by the claimant, was insufficient, and fatal to the validity of the lien."); Day v. Merchants Nat'l Bank of Mobile, 431 So.2d *703 1254, 1255-57 (Ala.1983) (The plaintiff's affidavit qualifying the statements of fact with the expression "`[t]o the best of my knowledge, information, and belief'" ... "was not based on personal knowledge, [and was] inadequate for purposes of Rule 56(e), [Ala. R. Civ. P.]"); Roberts v. Security Trust & Sav. Bank of Brilliant, 470 So.2d 674, 675-76 (Ala.1985) (The plaintiff's affidavit qualifying the statements of fact with the expression "[t]o the best of my personal knowledge" was "based on mere belief and, thus, [was] inadequate for purposes of Rule 56( [e]), Ala. R. Civ. P."). See also Oliver v. Brock, 342 So.2d 1, 4 (Ala.1977) ("[B]elief, no matter how sincere, is not equivalent to knowledge [and] a statement in an affidavit that the affiant verily believes does not satisfy the requirements of Rule 56(e)."); Sooudi v. Century Plaza Co., 622 So.2d 1275, 1278 (Ala.1993) ("Affidavits must contain statements based upon the personal knowledge of the affiant, and mere speculation and statements of subject beliefs are not the equivalent of personal knowledge."); Henderson v. Hanson, 414 So.2d 971, 973 (Ala.Civ.App. 1982) ("Mere belief is not equivalent to knowledge, and a statement in an affidavit that the affiant verily believes will not satisfy the requirements of rule 56(e)[, Ala. R. Civ. P.]").
My second exception to the rationale is that I respectfully disagree with the statement that, "[t]his Court has not expressly applied or rejected the general rule," 852 So.2d at 699, that "[a]s a general rule, `[i]f the proof of a promise or contract, void under the statute of frauds, is essential to maintain the action, there may be no recovery.' " 852 So.2d at 699 (quoting Pacurib v. Villacruz, 183 Misc.2d 850, 861, 705 N.Y.S.2d 819, 827 (N.Y.Civ.Ct.1999)) (emphasis added in main opinion). In Hinkle v, Cargill, Inc., 613 So.2d 1216, 1220 (Ala. 1992), this Court said:
"Cargill argues that a fraud action cannot be based on the breach of an unwritten contract that is void under the Statute of Frauds. As the above-cited authorities show, however, the Statute of Frauds does not bar proof of a fraud committed by means of a promise that ordinarily could not be enforced as a contractual promise because of the Statute of Frauds. Furthermore, `it is well settled in Alabama that fraud may be predicated upon a breach of contract which is void, because not in writing, where the contract was made for the purpose of perpetrating the fraud.' Caron v. Teagle, 408 So.2d 494, 496 (Ala. 1981)."
Likewise, in US Diagnostic v. Shelby Radiology, P.C., 793 So.2d 714 (Ala.2000), this Court affirmed a money judgment in favor of a plaintiff on a claim of promissory fraud based on an oral promise which was void by operation of the Statute of Frauds.[5] While I agree with the main opinion that we should adopt the general rule and that we should not countenance tort actions based on promises void by operation the Statute of Frauds, we should not do so without recognizing Hinkle, supra, *704 U.S. Diagnostic, supra, and their ancestors and any progeny and overruling them to the extent that they allow promissory fraud actions or other tort actions dependent entirely on promises void by operation of the Statute of Frauds.
NOTES
[1] This allegation refers to a letter dated August 7, 2000, in which the Bank offered to release its lien on tract II for $100,000.
[2] On appeal, the Holmans do not argue that they have alleged, or offered evidence of, promissory fraud. Thus, cases recognizing a promissory-fraud exception to the Statute of Frauds, see, e.g., US Diagnostic v. Shelby Radiology, P.C., 793 So.2d 714 (Ala.2000), need not be considered.
[3] Of course, the civil-conspiracy claim turns on the viability of the substantive tort claims. McLemore v. Ford Motor Co., 628 So.2d 548, 551 (Ala.1993) (if the "underlying cause of action is not viable, the conspiracy claim must also fail").
[4] We have considered the other issues raised by the Holmans, and we find each to be immaterial to the resolution of this case or to be without merit.
[5] While the Holmans do not characterize their fraudulent misrepresentation claim as "promissory fraud," they plead all of the essential elements of that species of promissory fraud recognized by US Diagnostic, supra, and the record contains substantial evidence tending to prove those elements. "The `character of a pleading is determined and interpreted from its essential substance, and not from its descriptive name or title.'" Ex parte Alfa Mutual General Ins. Co., 684 So.2d 1281, 1282 (Ala.1996) (quoting Union Springs Tel. Co. v. Green, 285 Ala. 114, 117, 229 So.2d 503, 505 (1969)). Notwithstanding the lack of explication in the Holmans' briefs, I am concerned that part of the text of the main opinion is inconsistent with our previously published cases, as I discuss in this special writing.