Patsy Rentz appeals from an order of the Madison Circuit Court partially granting Sarah Grant's motion for a summary judgment in an action commenced by Grant seeking Rentz's eviction from property owned by Grant and alleging breach of contract. We affirm.
 I. Facts
The events underlying this dispute date back to 1996. In August of that year, Rentz was approached by Jeff Smith, Grant's uncle, about renting a house owned by Grant in Huntsville ("the house"). Smith, who knew Rentz through prior business dealings, held a mortgage on the then vacant house, and he brokered a deal for Rentz to rent the house at a monthly rate of $700.[1]
Before moving into the house, Rentz performed significant renovations to the house at her own expense. She had the carpet removed, the floors refinished, new fixtures and flooring installed in the bathroom, and the interior walls repainted. Rentz moved into the house sometime in September 1996. From the start, Rentz made her rental payments directly to Smith, and Smith credited the payments against the debt owed him by Grant.
Rentz asserts that she was willing to undertake the cost of renovating the house because her arrangement with Grant was more than a rental agreement. Rentz contends that she entered into an oral agreement with Grant, whereby she would be allowed to purchase the house from Grant at a later date for $110,000, with part of the purchase price to come in the form of a credit for the expenses Rentz had incurred renovating the house.[2]
Rentz asserts that the cost of the renovations to the house was between $8,000 and $9,000.
Grant's version of the oral agreement is different. She insists that in the fall of 1996 she was not planning to sell the house and would not have set a purchase price at that time, and she maintains that she was not aware that Rentz was spending a large amount of money to renovate the house before moving in. Moreover, Grant asserts that the parties never finalized the specific terms of the agreement.
It is undisputed that there was no written lease detailing the rental agreement between Rentz and Grant nor was there a written contract memorializing the terms of any oral agreement for the sale of the house.
In April or May 2003, more than 6 years after Rentz began living in the house, Grant informed Rentz that she needed to sell the house in order to pay off her debt to Smith. Rentz contends that, at Grant's request, she mailed Grant an offer reflecting the original oral agreement reached by the parties in 1996. She alleges, however, that Grant informed her that she believed that the house was worth more than what Rentz alleges was the originally agreed upon price and that she intended to have an appraisal performed. Grant became upset after she received the results of the *Page 371 
appraisal because the appraisal report showed that the house had fallen into significant disrepair.[3] Despite the problems with the house, however, the appraisal report indicated that its appraised value had increased to $140,000.
Rentz asserts that Grant refused to respond to her written offer, and that when she made her rental payment for October 2003, she informed Grant that she would not make another payment until Grant had repaired the house or responded to her purchase offer.[4]
On October 15, 2003, Grant, through her attorney, sent Rentz a letter stating that she was terminating Rentz's tenancy as of November 30, 2003, as a result of Rentz's failure to maintain the house. The letter requested that Rentz move out. In the alternative, the letter contained an offer to sell the house to Rentz for $140,000, the then current appraised value. Rentz declined the offer to sell and refused to leave. Rentz did continue to make her monthly rental payments; however, she sent those payments to her attorney to hold in escrow until the dispute between her and Grant regarding the house was resolved.
 II. Procedural History
In January 2004, Grant filed a notice of eviction in the district court of Madison County. On March 15, 2004, the district court granted Rentz's motion to remove the action to the Madison Circuit Court under § 35-9-83, Ala. Code 1975. On July 2, 2004, Grant amended her eviction complaint to include claims alleging "Breach of Contract, Quantum Meruit, and/or Unjust Enrichment," by which Grant sought damages for Rentz's refusal to pay Grant rent on the house after October 2003, and a claim alleging wanton and willful conduct by Rentz, in which Grant asked for punitive damages.
As a defense, Rentz asserted that the two parties had an oral agreement concerning the purchase of the house. Rentz filed a counterclaim in which she alleged that Grant had breached the oral agreement by insisting on an increase in the purchase price. Rentz also alleged wantonness and unjust enrichment and sought specific performance of the oral agreement and damages.
In her answer to Rentz's counterclaim, Grant denied Rentz's allegations and asserted a variety of affirmative defenses, including the Statute of Frauds, § 8-9-2, Ala. Code 1975.
On September 7, 2004, Grant moved for a summary judgment on all claims. On November 12, 2004, the circuit court entered a summary judgment in favor of Grant as to her eviction action and breach-of-contract claim and a partial summary judgment on Rentz's counterclaim. The circuit court ordered Rentz evicted from the house and ordered Rentz to pay Grant $9,100 in back rent. The circuit court denied the summary-judgment motion as to Rentz's claim of unjust enrichment.
On December 1, 2004, the circuit court certified the partial summary judgment as a final judgment under Rule 54(b), Ala. R. Civ. P., and Rentz appealed.
 III. Standard of Review
Summary judgment is appropriate only when there is no genuine issue as to any material fact and the moving party demonstrates that he or she is entitled to a *Page 372 
judgment as a matter of law. Rule 56(c)(3), Ala. R. Civ. P. This Court reviews a summary judgment de novo, with the understanding that we must review the record in the light most favorable to the nonmoving party and resolve all reasonable doubts in favor of the nonmovant. American Gen. Life Acc. Ins. Co. v. Underwood,886 So.2d 807, 811 (Ala. 2004). The moving party has the burden of making a prima facie showing that he or she is entitled to a summary judgment. 886 So.2d at 811. If the movant satisfies this burden of production, the nonmovant then bears the burden of producing substantial evidence creating a genuine issue of material fact. 886 So.2d at 811. "`Substantial evidence' is `evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.'" Hess v. Market Inv.Co., 917 So.2d 140, 142 (Ala. 2005) (quoting West v. FoundersLife Assurance Co. of Florida, 547 So.2d 870, 871 (Ala. 1989)).
Moreover, when a movant makes a prima facie showing that he or she is entitled to a summary judgment by raising the affirmative defense of the Statute of Frauds, the burden then shifts to the nonmovant to come forward with substantial evidence that the Statute of Frauds does not apply, "`[e]ven though [the nonmoving party] may produce [evidence of] a genuine issue of material fact [on matters such as the terms or existence of a contract].'"Casey v. Travelers Ins. Co., 585 So.2d 1361, 1362-63 (Ala. 1991) (quoting Durham v. Harbin, 530 So.2d 208, 210 (Ala. 1988)). If the nonmovant does not meet that burden, summary judgment is appropriate.
 IV. Analysis
The central issue presented in this case is whether Rentz and Grant have an enforceable contract for the sale of the house. Rentz asserts that she has presented substantial evidence indicating that Grant is bound by contract to sell Rentz the house; thus, she argues, the trial court erred in entering a summary judgment for Grant on Rentz's counterclaim alleging breach of contract and seeking specific performance. Moreover, Rentz relies on this allegedly enforceable contract as her only defense to Grant's action for eviction and Grant's claim for back rent.[5]
It is undisputed, however, that Rentz and Grant did not enter into a written contract detailing this oral agreement. Grant argues, therefore, that even if the parties entered into an oral agreement for the sale of the house, that oral agreement is void under Alabama's Statute of Frauds, § 8-9-2, Ala. Code 1975. Because we conclude that Grant's Statute of Frauds defense is dispositive, we need not consider the parties' other arguments.[6] *Page 373 
The Statute of Frauds provides, in pertinent part:
 "In the following cases, every agreement is void unless such agreement or some note or memorandum thereof expressing the consideration is in writing and subscribed by the party to be charged therewith or some other person by him thereunto lawfully authorized in writing:
 ". . . .
 "(5) Every contract for the sale of lands, tenements or hereditaments, or of any interest therein, except leases for a term not longer than one year, unless the purchase money, or a portion thereof is paid and the purchaser is put in possession of the land by the seller. . . ."
With the Statute of Frauds, the legislature identified "defined categories of oral promises that are especially subject to fabrication and especially unworthy of reliance or enforcement."Bruce v. Cole, 854 So.2d 47, 58 (Ala. 2003). Oral promises for the sale of "lands, tenements or hereditaments, or of any interest therein," such as the one here, are inherently suspect, and the Statute of Frauds prohibits the enforcement of such a promise even though both parties acknowledge the existence of the oral agreement. Darby v. Johnson, 477 So.2d 322, 326-27 (Ala. 1985).
There is, however, one exception — the "partial performance" exception — that will withdraw oral agreements for the sale of land from applicability of the Statute of Frauds. Rentz relies on this exception in an attempt to save her oral agreement with Grant.
To satisfy the partial-performance exception, the putative purchaser must demonstrate that he or she has paid all or a portion of the purchase price and that he or she was put in possession of the land by the seller. Holman v. ChildersburgBancorporation, Inc., 852 So.2d 691, 697 (Ala. 2002). Here, Rentz asserts that she paid part of the purchase price of the house in the form of renovations to the house, which she performed at her own expense before she established her residency, and that she was put in possession of the house by Grant. She contends, therefore, that her oral agreement with Grant satisfies the partial-performance exception to the Statute of Frauds. We conclude, however, that it does not.
The fact that Rentz did not pay the portion of the purchase price she alleges she paid for the house in cash is immaterial.Gibson v. Bryant, 267 Ala. 97, 99, 100 So.2d 32, 34 (1958). "The purchase price may be anything of money value and payment of part of the purchase price need not have been contemporaneous."267 Ala. at 99, 100 So.2d at 34. Moreover, "part performance or payment may be inferred from the construction of improvements, but only if performed under the contract of sale." MerchantsNat'l Bank of Mobile v. Steiner, 404 So.2d 14, 19 (Ala. 1981).
Even if Rentz could demonstrate partial payment, however, we conclude that the partial-performance exception is inapplicable here because Rentz has not satisfied the possession prong of the exception to the Statute of Frauds. The *Page 374 
"acts of possession" necessary to satisfy the partial-performance exception "`must be clear and definite, and referableexclusively to the contract.'" Smith v. Smith, 466 So.2d 922,924 (1985) (quoting Hagood v. Spinks, 219 Ala. 503, 504,122 So. 815, 816 (1929)) (emphasis added). "`"If the possession . . . could be accounted for just as well by some other right or title actually existing in the vendee's favor, or by some relation between him and the vendor other than the alleged oral contract, it is not such a possession as the doctrine requires."'"Holman, 852 So.2d at 698 (quoting Smith, 466 So.2d at 925, quoting in turn Jones v. Jones, 219 Ala. 62, 64, 121 So. 78, 78
(1929)). In other words, "`"[t]he exception applies only where the acts of part performance cannot be explained consistently with any other contract than the one alleged."'" Holman,852 So.2d at 698 (quoting Quinlivan v. Quinlivan, 269 Ala. 642,645, 114 So.2d 838, 840 (1959), quoting other cases) (emphasis added in Holman).
Rentz relies on the partial-performance exception to save her oral agreement to purchase the house from Grant, yet as demonstrated by her own deposition testimony, her possession of the house can be explained fully by her status as lessee. It has long been established under Alabama law that "`possession taken as lessee, and continued without visible change, does not tend to prove that such occupant was put in possession of the land as purchaser by the seller, so as to meet [the partial-performance exception] of the [S]tatute of [F]rauds.'" Formby v. Williams,203 Ala. 14, 17, 81 So. 682, 685 (1919) (quoting Linn v.McLean, 85 Ala. 250, 253, 4 So. 777, 778 (1887)); see alsoMerchants Nat'l Bank of Mobile v. Steiner, 404 So.2d at 19 ("`A possession taken as a lessee, and continued without visible change, does not tend to prove that such occupant was put in possession by the owner, and is not an act tending to give notice of a change of holding.'" (quoting Reynolds v. Bryant,281 Ala. 372, 375-76, 202 So.2d 734, 737 (1967))).
During her deposition, when asked to explain the terms of her oral agreement with Grant, Rentz stated that "[t]he agreement was . . . [i]f I would rent the house for a period of time, then ata later date I could purchase the house for a hundred and ten thousand dollars . . . [and] as a down payment or as part of the purchase price, which I was to get back, I spent the money to renovate the house. . . ." (emphasis added). Later during her deposition when asked once again to characterize the oral agreement, Rentz stated: "I had to lease [the house] for at least three or four years before I could purchase that house." (Emphasis added.) Moreover, during the proceeding, Rentz stated:
 "The agreement was that I paid rent and lived in that house. I paid a down payment on it. I fixed it. I moved into it. I paid rent until I could buy it.
That was the agreement. I had to pay for it. I had to rent it for at least three years, three or four years, I had to do that which I did."
(Emphasis added.)
Viewed in a light most favorable to Rentz, the record clearly shows that Rentz took possession of the house as a lessee and had, at best, an option to the purchase the house. Rentz, therefore, has not demonstrated that her possession of the house relates exclusively to an agreement to purchase the house and not to her agreement to lease the house; thus, Rentz cannot rely on her possession as lessee to save her oral agreement to purchase the house from the operation of the Statute of Frauds. As a result, the oral agreement to purchase the house is void under the Statute of Frauds, and Rentz cannot assert it to defeat *Page 375 
Grant's motion for a summary judgment.
 V. Conclusion
We conclude that Grant is entitled to the partial summary judgment entered below because any oral agreement between the parties for the sale of the house is void under the Statute of Frauds. As a result, Rentz cannot assert it as a defense to Grant's eviction action and breach-of-contract claim, nor can she rely on it to support her counterclaims of breach of contract, specific performance, and wantonness. The circuit court's summary judgment for Grant on those claims, therefore, is affirmed.
AFFIRMED.
LYONS, WOODALL, SMITH, and PARKER, JJ., concur.
[1] Smith's version of the arrangement is not in the record. Moreover, Smith has died and thus is not available to testify.
[2] Although in her first affidavit filed in this case Rentz states that she entered into this agreement with Smith, in her deposition Rentz asserts that Grant was involved in the negotiations and that Grant set the purchase price. Rentz alleges that Grant agreed to sell the house for $110,000, which was $1,000 less than the appraised value of the house in 1996, because if she sold the house directly to Rentz Grant would not have to pay a real-estate commission.
[3] According to Grant, the appraisal showed that the roof needed to be replaced, that "trees [were] growing in the gutter," and that "the ceilings [were] falling down because the trees [had not] been trimmed."
[4] Rentz states that once Smith became terminally ill, she made her monthly rent payments, including the payment for October 2003, to Nancy Gaines, Smith's daughter.
[5] It is undisputed that Grant owns the house, that Rentz has rented the house at a monthly rate of $700 since the fall of 1996, and that there was no written lease agreement between the parties. Under Alabama law, therefore, a month-to-month tenancy is presumed. See § 35-9-4, Ala. Code 1975 ("In the absence of any agreement respecting the length of time for the rent, the hiring is presumed to be monthly."). Moreover, the record clearly indicates that Grant provided sufficient notice to terminate Rentz's tenancy, see § 35-9-5, Ala. Code 1975 (requiring "10 days' notice in writing" to terminate a "tenancy by the month"), that Rentz refused to vacate the premises, and that Rentz stopped making her monthly rental payments to Smith's daughter after her payment for October 2003.
[6] Rentz's case hinges on the validity of the oral agreement with Grant for the sale of the house. As noted above, Rentz asserts the oral agreement as a defense to Grant's eviction action and her claim for back rent; moreover, Rentz's allegations in her counterclaim of breach of contract and seeking specific performance are based on the oral agreement. As for Rentz's wantonness claim, nothing in the record before us indicates that Grant acted "with a reckless or conscious disregard of the rights or safety of" Rentz in attempting to have her evicted, so as to entitle Rentz to punitive damages under § 6-11-20(b)(3), Ala. Code 1975, other than Rentz's contention that Grant was without the authority to do so because of the oral agreement. Because we conclude that the oral agreement is void under the Statute of Frauds, Rentz cannot prevail on these claims.