THOMAS, Judge.
In August 2008, two shrimp boats, the Brenda Darlene and the Apalachee Girl, returned from a shrimping trip to Texas. As was typical of both boats, they docked and sold their catch to Bon Secour Fisheries, Inc. (“BSF”), a seafood packing company. Two years later, in August 2010, Brenda Darlene, Inc., and Apalachee Girl, Inc. (“the shrimp-boat companies”), sued BSF, alleging breach of contract, fraudulent misrepresentation, fraudulent suppression, unjust enrichment, and conversion. The shrimp-boat companies alleged in their complaint that BSF, through its president and agent John A. Nelson, had *1245 entered into an oral agreement to purchase the shrimp boats’ catch for a greater price than it actually paid to the shrimp-boat companies; that BSF, through John, had fraudulently misrepresented the price BSF intended to pay for the shrimp boats’ catch; that BSF suppressed certain information during the negotiation of the purchase of the shrimp boats’ catch; that BSF had been unjustly enriched by the purchase of the catch at a lower price than promised; and that BSF had converted the shrimp boats’ catch.
BSF answered the complaint, and this action was consolidated with a similar action involving BSF and another shrimp boat, the Erica Lynn. BSF moved for a summary judgment in its favor against the shrimp-boat companies. In its motion, BSF argued that the shrimp-boat companies had based their claims on an oral contract that was void under Ala.Code 1975, § 7-2-201, the Statute of Frauds contained in the Uniform Commercial Code; that it had not fraudulently misrepresented or suppressed any material facts; that it was not unjustly enriched by its purchase of the shrimp boats’ catch at a lower price; and that it had not converted the shrimp boats’ catch. In its motion for a summary judgment, BSF included a request for attorney fees pursuant to the Alabama Litigation Accountability Act (“the ALAA”), codified at Ala.Code 1975, § 12-19-270 et seq., arguing that the shrimp-boat companies’ claims were brought without substantial justification and were frivolous.
The trial court set BSF’s motion for a summary judgment for a hearing to be held on Tuesday, February 14, 2012, at 9:00 a.m. The shrimp-boat companies filed a response in opposition to BSF’s summary-judgment motion on Friday, February 10, 2012. BSF moved to strike the shrimp-boat companies’ response in opposition because, BSF contended, it had been filed less than two days before the hearing. The trial court granted BSF’s motion and struck the shrimp-boat companies’ response.
The trial court also entered a summary judgment in favor of BSF and granted its motion seeking attorney fees under the ALAA. The judgment does not state the trial court’s reasoning for the entry of the summary judgment or for the award of attorney fees pursuant to the ALAA. At the request of the parties, because the consolidated case remained pending, the trial court certified the summary judgment as final, pursuant to Rule 54(b), Ala. R. Civ. P. The shrimp-boat companies timely appealed to the Alabama Supreme Court, which transferred the appeal to this court, pursuant to Ala.Code 1975, § 12-2-7(6).
The shrimp-boat companies first argue that the trial court erred when it struck their response as being untimely filed. Rule 56(c)(2), Ala. R. Civ. P., requires that a statement or affidavit filed in opposition to a motion for a summary judgment be served two days before the date of the summary-judgment hearing. The shrimp-boat companies argue that the filing of their response on Friday, February 10, 2012, met that requirement. The shrimp-boat companies argue that because Sunday, February 12, 2012, was two days before the date of the hearing, their response was due to be filed on that date; thus, they reason, their response was actually filed early.
BSF, however, argues that the shrimp-boat companies have failed to properly apply Rule 6(a), Ala. R. Civ. P., to the computation of the time for the filing of the response to the summary-judgment motion. BSF correctly points out that, according to Rule 6(a), when a period under the rules is less than 11 days, the intermediate weekends and holidays are not in- *1246 eluded in the computation of the elapsed days. Thus, BSF contends, the shrimp-boat companies’ response was due not on Sunday, February 12, but on Friday, February 10, by 9:00 a.m., so as to have been served 2 days, or more specifically, a full 48 hours, before the hearing. Because the shrimp-boat companies filed their response on Friday, February 10, at 1:50 p.m., BSF contends that the trial court properly struck the shrimp-boat companies’ response.
Neither party is entirely correct. The shrimp-boat companies are incorrect in arguing that Sunday, February 12, 2012, was the actual due date for their response; as BSF correctly points out, application of Rule 6(a) excludes the weekend in the computation of time. See Bank of Brewton, Inc. v. International Fid. Ins. Co., 827 So.2d 747 (Ala.2002) (applying Rule 6(a) to determine that a motion for a summary judgment had been filed too late when a party filed the motion only nine calendar days before the pretrial-motion hearing). However, the Rules of Civil Procedure do not require that an act that must be performed under the rules, such as service or filing, be completed at a particular time on the date upon which it is due, just that it be completed on that date. See Rule 6(a) (explaining that, if the last day of the period prescribed by the rules ends on a weekend or a holiday, the period then runs until the end of the next day that is not a weekend or holiday); Rule 5, Ala. R. Civ. P. (stating that, when service is required under the rules, service may be effected by mail, delivery, or by the electronic-filing system); see also Rule 77(a), Ala. R. Civ. P. (stating that the clerk’s office “shall be deemed always open for the purpose of filing any pleading or other proper paper....”). Thus, the trial court erred when it struck the shrimp-boat companies’ response to BSF’s motion for a summary judgment as being untimely.
We now turn to whether the trial court erred in entering a summary judgment in favor of BSF on all the shrimp-boat companies’ claims. Because we have determined that the trial court erred in striking the shrimp-boat companies’ response, we will consider that submission in our review of the summary judgment. See Holden v. Edwards Specialties, Inc., 62 So.3d 1029, 1034 (Ala.Civ.App.2009) (determining that the trial court had erred in striking an affidavit filed in opposition to a motion for a summary judgment and considering that affidavit in its analysis of the propriety of the summary judgment). We review a summary judgment de novo; we apply the same standard as was applied in the trial court. A motion for a summary judgment is to be granted when no genuine issue of material fact exists and the moving party is entitled to a judgment as a matter of law. Rule 56(c)(3), Ala. R. Civ. P. A party moving for a summary judgment must make a prima facie showing “that there is no genuine issue as to any material fact and that [it] is entitled to a judgment as a matter of law.” Rule 56(c)(3); see Lee v. City of Gadsden, 592 So.2d 1036, 1038 (Ala.1992). If the movant meets this burden, “the burden then shifts to the nonmovant to rebut the movant’s prima facie showing by ‘substantial evidence.’ ” Lee, 592 So.2d at 1038 (footnote omitted). “[S]ubstantial evidence is evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.” West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala.1989); see Ala.Code 1975, § 12-21-12(d). Furthermore, when reviewing a summary judgment, the appellate court must view all the evidence in a light most favorable to the nonmovant and must entertain all reasonable inferences from the evidence that a *1247 jury would be entitled to draw. See Nationwide Prop. & Cas. Ins. Co. v. DPF Architects, P.C., 792 So.2d 369, 372 (Ala.2000); and Fuqua v. Ingersoll-Rand Co., 591 So.2d 486, 487 (Ala.1991).
In support of its summary-judgment motion, BSF submitted the affidavits of David Nelson and John A. Nelson. David Nelson is the office manager and head of the purchase and sales office at BSF. John A. Nelson is BSF’s president and is responsible for the unloading of shrimp boats at BSF’s docks. In addition, BSF submitted several documents that, it said, evidenced in writing a contract with the shrimp-boat companies to purchase their catch at the lower market price.
In his affidavit, David explained that one of his duties is to set the price of shrimp; according to David, he must evaluate the pricing of shrimp along the Gulf Coast in order to determine the price that BSF should pay for shrimp. David asserts in his affidavit that the price for shrimp fluctuates often and may be affected by many factors; a good season, David says, may cause a drop in prices. David testified in his affidavit that he was on vacation between August 11, 2008, and August 15, 2008, but that he was still aware of the market at the time. David said that he evaluated the various factors and set the price on August 15, 2008; he noted that the price he set was substantially lower than the previous price because, he explained, shrimping had been “quite good” in Texas, where the shrimp boats had been shrimping.
According to David, “[sjhrimpers know who to come to, to find out what [BSF is] paying for shrimp.” He explained that shrimp-boat operators always prepare an “estimate sheet” in order to determine a rough estimate of the expected proceeds of the shrimping trip so that the crew can be paid at that time. David admitted that Robert MeClantoc, the operator of the Erica Lynn, had complained to him that the price BSF had paid for his shrimp had been too low and that it had not been fair for BSF to lower the price after quoting a higher price to him on the docks; according to David, he had had a meeting with several shrimp-boat operators at which MeClantoc made his concerns known. However, David testified, Danny Potter, the owner of the Brenda Darlene and the owner and operator of the Apalachee Girl had not objected to the price BSF had paid for his shrimp. David further testified that BSF had lost money on the shrimp it had purchased from the Brenda Darlene and from the Apalachee Girl because, he said, by the time it was sold by BSF, the price of shrimp had dropped even more.
In his affidavit, John testified that “it was common knowledge at [BSF] that the price for shrimp is set by the people in the office, particularly my brother, David.... ” John said that he would go to the office to get a “price list” but that he had never been given a document to give to the shrimp-boat operators at the time of unloading. He also stated that “[t]he price list we have paid in the past does not guarantee a price. This pricing is done after research, and the price list is kept in the office.... The prices I generally have at the dock are the prices from the last time the boats unloaded.” According to John, the shrimp-boat operators usually estimate the price they expect to be paid so that they can pay their crew; he says that this estimate is usually intentionally set low so that the operators do not overpay their crews.
John testified that he had told McClan-toc on the dock that “I thought the price would hold,” referring to the prices paid the previous week. John further explained that “I believed this, but I was *1248 wrong.” When McClantoc and the other operators or owners demanded a meeting regarding the lower prices for shrimp, John said, David had explained that the higher price was not market price and that BSF could pay only market price for the shrimp it had unloaded. According to John, Potter did not object to the amount he had been paid for the shrimp BSF purchased from the Brenda Darlene and the Apalachee Girl.
The shrimp-boat companies attached to their response the affidavits of Danny Potter, Robert McClantoc, and Larry Hicks, the operator of another shrimp boat. Attached to Hicks’s affidavit was the price sheet for shrimp provided to the boats that unloaded at BSF the first week of August 2008, which reflected the price Hicks was paid for his shrimp. The price sheets provided to the Brenda Darlene and the Apalachee Girl were also provided as exhibits in opposition to the summary-judgment motion; those price sheets reflect a decrease in the price paid by BSF for various types of shrimp.
In his affidavit, McClantoc testified that when he arrived at the docks he was aware of the price paid to Hicks for his catch about 10 days before. Thus, McClantoc explained, he asked John if the prices had changed from the prices previously paid to Hicks. According to McClantoc, John said: “ ‘No, the price had not changed.’ ” In addition, McClantoc testified that he would calculate his “estimate sheet” on a lower price than that quoted to him because, he said, the estimated price is based on ungraded shrimp and the grades of the shrimp may change, “but not the prices.” McClantoc testified that
“[BSF] has never retroactively changed the purchase price quoted to me at [the] time of unloading at the dock; and I am not aware of any retroactive change after prices were quoted to any boat [operator], except on this occasion. The trade practice is for [BSF] to pay the price quoted at the time it accepts the shrimp for processing.”
McClantoc further testified that he had complained when he had learned that BSF had cut the price on the shrimp he had unloaded. He said that he had confronted John, who had told him that the price had not increased as BSF had anticipated so BSF “‘just could not pay those prices.’” McClantoc said that he had received a similar response from David, who had said that he had been on vacation and that he had expected the prices to increase but that they had not.
Danny Potter submitted two affidavits. The first affidavit was the same affidavit he had submitted in the consolidated case; his second, or “supplemental,” affidavit contained more factual information relating to the transactions between the Brenda Darlene, the Apalachee Girl, and BSF. Potter testified in his first affidavit that he had often received his price quotes from John, as he did in August 2008, when his shrimp boats docked. He specifically stated that “[i]t is in the ordinary course of business for shrimpers to obtain prices from John.... It is not in the normal course of business for shrimpers to obtain prices from a price sheet in the [BSF] building.” Furthermore, Potter testified that, when asked about prices, John had “confirmed prices would not change until the last boat came in from the Texas trip and unloaded.” According to Potter, the Apalachee Girl was the last boat to come in from the Texas trip.
In his supplemental affidavit, Potter stated that he had told David at the meeting that “it was unacceptable for [BSF] to cut the prices after taking possession of the shrimp.” Potter said that he had insisted that he be paid the quoted price for the shrimp unloaded from the Brenda Dar *1249 lene and the Apalachee Girl. However, Potter said, David had not agreed to honor the quoted price and said that BSF was “ ‘not going to take a hit because John ... made a mistake.’ ” Potter also testified that when he confronted John about BSF’s refusal to honor the quoted price, John admitted that it was “wrong” but that the company would not “take a hit.” In addition, according to Potter, John said “ ‘it’s a done deal’ ” and reminded Potter that, once the shrimp are unloaded from the boats, “ ‘they belong to [BSF].’ ”
The shrimp-boat companies argue that the trial court erred in entering a summary judgment in favor of BSF on their breach-of-contract claim. In its summary-judgment motion and on appeal, BSF argues that the shrimp-boat companies’ breach-of-eontract claim is barred by § 7-2-201 because the alleged contract is an oral one for the purchase of goods valued at over $500, which, pursuant to that statute, must be in writing. That statute provides:
“(1) Except as otherwise provided in this section a contract for the sale of goods for the price of $500 or more is not enforceable by way of action or defense unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought or by his authorized agent or broker. A writing is not insufficient because it omits or incorrectly states a term agreed upon, but the contract is not enforceable under this paragraph beyond the quantity of goods shown in such writing.
“(2) Between merchants if within a reasonable time a writing in confirmation of the contract and sufficient against the sender is received and the party receiving it has reason to know its contents, it satisfies the requirements of subsection (1) against such party unless written notice of objection to its contents is given within 10 days after it is received.
“(3) A contract which does not satisfy the requirements of subsection (1) but which is valid in other respects is enforceable:
“(a) If the goods are to be specially manufactured for the buyer and are not suitable for sale to others in the ordinary course of the seller’s business and the seller, before notice of repudiation is received and under circumstances which reasonably indicate that the goods are for the buyer, has made either a substantial beginning of their manufacture or commitments for their procurement; or
“(b) If the party against whom enforcement is sought admits in his pleading, testimony or otherwise in court that a contract for sale was made, but the contract is not enforceable under this provision beyond the quantity of goods admitted; or
“(c) With respect to goods for which payment has been made and accepted or which have been received and accepted (Section 7-2-606).”
§ 7-2-201.
The shrimp-boat companies point out that an oral contract is enforceable despite the lack of a writing if it meets one of the exceptions set out in § 7-2-201. The shrimp-boat companies contend that the oral contract in the present case meets the requirements of the exceptions listed in § 7 — 2—201 (3)(b) and (c). According to the shrimp-boat companies, the alleged oral contract is enforceable despite the lack of a writing because BSF accepted the shrimp from both shrimp boats and because BSF has admitted that the parties had a contract whereby the shrimp-boat companies would sell and BSF would pur *1250 chase shrimp. We cannot agree with the shrimp-boat companies that the situation here presented satisfies either § 7-2-201(3)(b) or (c).
In the Official Comments to § 7-2-201, the drafters explained the “partial-performance” exception set out in § 7-2-201(3)(c):
“Receipt and acceptance either of goods or of the price constitutes an unambiguous overt admission by both parties that a contract actually exists. If the court can make a just apportionment therefor, the agreed price of any goods actually delivered can be recovered without a writing or, if the price has been paid, the seller can be forced to deliver an appor-tionable part of the goods. The overt actions of the parties make admissible evidence of the other terms of the contract necessary to a just apportionment.”
(Emphasis added.) Notably, the issue in the present case is the lack of an agreement regarding price. Thus, § 7-2-201(S)(c) cannot operate to permit the shrimp-boat companies to recover “the agreed price” of the shrimp. Because the parties do not agree on the price term, the partial-performance exception cannot be fairly applied, because it would impose one party’s price term over that proposed by the other party. This conclusion is supported by other authority in the Uniform Commercial Code, which indicates that “[wjhere ... the parties intend not to be bound unless the price be fixed or agreed and it is not fixed or agreed there is no contract.” Ala.Code 1975, § 7-2-305(4).
Furthermore, we cannot agree with the shrimp-boat companies that the exception contained in § 7-2-201(3)(b) operates in this instance. That subsection provides that if a “party against whom enforcement is sought admits in [a] pleading, testimony or otherwise in court that a contract for sale was made,” that contract is enforceable. § 7-2-201 (3)(b). This particular exception to the Statute of Frauds is called the judicial-admissions exception. See Holley Equip. Co. v. Credit Alliance Carp., 821 F.2d 1531, 1534 (11th Cir.1987). As explained by the Holley Equipment court:
“The purpose of a statute of frauds is to ‘prevent fraud and perjury in actions brought on contracts.’ Campbell[ v. Campbell], 371 So.2d [55,] 60 [ (Ala.Civ.App.1979) ]; see Dean[ v. Myers], 466 So.2d [952,] 955 [(Ala.1985) ]; Cox v. Cox, 292 Ala. 106, 289 So.2d 609, 612 (1974). There is obviously ‘little danger of fraud or perjury where both parties admit to the substance of the contract.’ Campbell, 371 So.2d at 60. Thus, the judicial admissions exception to the statute of frauds permits enforcement of an unwritten agreement when the existence and the terms of the oral contract are as certain as if they were reduced to a writing. See Cox, 289 So.2d at 612. Here, however, there is a complete disagreement concerning the existence of a contract because of a substantial discrepancy in the terms of the alleged agreement.”
821 F.2d at 1534 (emphasis added). The Holley Equipment court determined that the defendant in that case “ha[d] not admitted facts sufficient to establish an unconditional assent to a contract for sale according to the terms alleged by [the plaintiff].” Id. at 1535.
The Holley Equipment court relied, in part, on Allen v. Harris Truck & Trailer Sales, Inc., 490 F.Supp. 488, 490 (E.D.Mo.1980), in concluding that application of § 7-2-201(3)(b) requires judicial admission of not only a contract but of the material terms of the contract. Id. In Allen, the federal district court concluded that the judicial-admission exception to the Statute *1251 of Frauds could not be applied “where both parties agree that a contract was made but disagree as to what the terms of that contract were.” Allen, 490 F.Supp. at 489. The Allen court explained its reasoning thusly:
“This Court does not believe that [the judicial-admission exception] is applicable in this situation, since defendant has not admitted a contract for sale was made on the terms alleged by plaintiff....
“To allow defendant’s testimony to avert the bar of the statute of frauds would place this Court in the undesirable position of determining which party is correctly stating the agreed upon terms of the sale. The statute of frauds was designed to prevent just such a swearing match.”
Id. at 489-90.
Likewise, in the present case, the facts admitted by BSF do not support a conclusion that it unconditionally assented to the contract for purchase of the shrimp based on the price term the shrimp-boat companies argue applies. Although it is apparent that the parties in the present case admit that shrimp was offered for sale by the shrimp-boat companies and purchased by BSF, the parties each believe that a different oral contract was made. BSF contends that the price term of the oral contract was market price and the shrimp-boat companies contend that the price term was a fixed price allegedly quoted by John. Thus, BSF did not admit that a contract was made for the purchase of the shrimp for the quoted price, and the judicial-admission exception in § 7-2-201(3)(b) does not apply to make the alleged oral contract enforceable.
The shrimp-boat companies concede that the only contract between them and BSF was an oral one and that enforcement of that contract is precluded by § 7-2-201 unless an exception applies. Because we conclude that the alleged oral agreement between the shrimp-boat companies and BSF does not meet either of the exceptions set out in § 7-2-201 (3)(b) or (c), we conclude that the trial court properly entered a summary judgment in favor of BSF on the shrimp-boat companies’ breach-of-contract claim.
The shrimp-boat companies also alleged that BSF had fraudulently misrepresented and/or suppressed material facts in its negotiations with the shrimp-boat operators. In its motion for a summary judgment, BSF challenged whether the shrimp-boat companies could have reasonably relied on any alleged misrepresentation made by BSF through John. We note that the shrimp-boat companies appear to allege both ordinary fraud and promissory fraud in their complaint. “The elements of the tort of fraudulent misrepresentation are (1) a false representation (2) regarding a material existing fact, (3) which the plaintiff relies upon, and (4) damages proximately caused by the misrepresentation.” Smith v. J.H. Berry Realty Co., 528 So.2d 314, 316 (Ala.1988). The allegation that, at the time the shrimp boats unloaded, John represented that the price BSF would pay for the shrimp was the same price as the previous week would have been a false representation regarding an existing material fact.
However, to the extent that the shrimp-boat companies base their claims on the allegations that John’s representation that BSF would pay a particular price for the shrimp once it was graded and that John knew at the time he made that representation that BSF did not intend to purchase the shrimp at the quoted price because the price might change, the shrimp-boat companies state a claim of promissory fraud.
*1252 “To establish a cause of action for promissory fraud, the plaintiff must prove: (1) that the defendant made a false representation of a material fact; (2) that the false representation was relied upon by the plaintiff; (3) that the plaintiff was damaged as a proximate result of the reliance; (4) that the representation was made with a present intent to deceive; and (5) that when the representation was made the defendant intended not to perform in accordance with it. Leisure American Resorts, Inc. v. Knutilla, 547 So.2d 424, 426 (Ala.198[9]). Thus, to establish a cause of action for promissory fraud, [a plaintiff] must prove each element of a cause of action for fraud and also that, at the time the representation was made to [him or her], [the defendant] had a present intent to deceive [the plaintiff]. Valley Properties, Inc. v. Strahan, 565 So.2d 571 (Ala.1990).”
Howard v. Wolff Broad. Corp., 611 So.2d 307, 311 (Ala.1992).
In either event, we agree with BSF that the shrimp-boat companies are unable to demonstrate reasonable reliance because of the rules announced in Wilma Corp. v. Fleming Foods of Alabama, Inc., 613 So.2d 359, 366 (Ala.1993), overruled on other grounds by Bruce v. Cole, 854 So.2d 47, 58 (Ala.2003), and Bruce. In Wilma Corp., our supreme court explained that, in a commercial transaction involving the sale of real property, a party that should have known that the Statute of Frauds, codified at Ala. Code 1975, § 8-9-2, required that certain real-estate transactions be in writing could not have justifiably relied on an oral representation that a party had authority to execute a lease when written authority was required. Wilma Corp., 613 So.2d at 366. Based on what the court referred to as “ ‘the particular facts of [Wilma Corporation’s] knowledge, understanding, and present ability to fully comprehend the nature of the subject transaction and its ramifications,”’ the court concluded that “Wilma Corporation has not presented substantial evidence creating a genuine issue as to whether it had ‘justifiably relied’ on the alleged misrepresentation.” [1] Id.
Similarly, in Bruce, our supreme court concluded that “an oral promise that is void by operation of the Statute of Frauds will not support an action against the promisor for promissory fraud.” Bruce, 854 So.2d at 58. The Bruce court laid out its reasoning in detail:
“[I]n the more recent case of Holman v. Childersburg Bancorporation, Inc., 852 So.2d 691, 701 (Ala.2002), this Court held
“ ‘that where, as here, an element of a tort claim turns on the existence of an alleged agreement that cannot, consistent with the Statute of Frauds, be proven to support a breach-of-contract claim, the Statute of Frauds also bars proof of that agreement to support the tort claim. Were the rule otherwise, the Statute of Frauds could be effectively avoided by the simple wording of the complaint.’
“The Holman Court explains:
“ ‘As a general rule, “[i]f the proof of a promise or contract, void under the statute of frauds, is essential to maintain the action, there may be no recovery.” Pacurib v. Villacruz, 183 *1253 Misc.2d 850, 861, 705 N.Y.S.2d 819, 827 (N.Y.Civ.Ct.1999) (emphasis added); see also Dwight v. Tobin, 947 F.2d 455, 460 (11th Cir.1991); McDaboo, Inc. v. Chet Adams Co., 548 F.Supp. 456, 458 (D.S.C.1982) (it is a “well accepted doctrine that one cannot circumvent the Statute of Frauds by bringing an action in tort, when the tort action is based primarily on the unenforceable contract”); Weakly v. East, 900 S.W.2d 755 (Tex.Ct.App.1995). This is so, because, “[i]f a plaintiff was allowed to recover the benefit of a bargain already barred by the statute of frauds, the statute of frauds would become meaningless.” Sonnichsen v. Baylor University, 47 S.W.3d 122, 127 (Tex.Ct.App.2001). “Thus, the Statute of Frauds bars a [tort] claim when a plaintiff claims as damages the benefit of the bargain that he would have obtained had the promise been performed.” Id.’
“852 So.2d at 699.
“In 1823, Alabama adopted the English Statute of Frauds, 29 Car. II, ch. 3 (1676), enacted by Parliament and approved by King Charles II, effective June 24, 1677. Toulmin Code 1823, Tit. 18, Ch. Ill, § 1. Section 1, 29 Car. II, ch. 3 (1676), states the purpose of the Statute of Frauds, in pertinent part: ‘For prevention of many fraudulent Practices, which are commonly endeavored to be upheld by Perjury and Subordination [sic] of Perjury.’ Further, ‘[t]he public policy underlying the statute of frauds is that fraud or perjury will not be rewarded by denying enforcement of alleged contracts that never, in fact, existed. The statute exists to protect not just the parties to a contract, but also to protect the fact finder from charlatans, perjurers and the problems of proof accompanying oral contracts.’ 73 Am.Jur.2d Statute of Frauds § 425, p. 102 (2001) (footnotes omitted) (emphasis added). See David Co. v. Jim W. Miller Constr., Inc., 444 N.W.2d 836 (Minn.1989), and McInerney v. Charter Golf, Inc., 176 Ill.2d 482, 223 Ill.Dec. 911, 680 N.E.2d 1347 (1997). Moreover, ‘[t]he purpose of the statute of frauds is to prevent the fraudulent enforcement of unmade contracts, and not to legitimate [sic] the enforcement of contracts that were in fact made.’ 73 Am.Jur.2d Statute of Frauds § 425, p. 103 (2001) (footnote omitted). See Timberlake v. Heflin, 180 W.Va. 644, 379 S.E.2d 149 (1989).
“Thus, the Statute of Frauds identifies defined categories of oral promises that are especially subject to fabrication and especially unworthy of reliance or enforcement. Therefore, for the courts, on a theory of promissory fraud, to countenance a plaintiffs claim that he has relied on such a promise and to redress that plaintiffs claim that he has suffered from the breach of such a promise, defies the policy and frustrates the efficacy of the Statute of Frauds.”
Bruce, 854 So.2d at 57-58.
We realize that the Statute of Frauds set out in § 7-2-201 is not the same Statute of Frauds at issue in either Wilma Corp. or Bruce, which both concerned the Statute of Frauds set out in AIa.Code 1975, § 8-9-2. However, like § 8-9-2, § 7-2-201 was designed to prevent fraud. As noted above in our discussion regarding § 7-2-201 and its exceptions, the purpose of requiring a writing in a sale-of-goods situation is based on the desire to prevent “swearing matches” regarding the terms of an alleged agreement between parties. Thus, we see no distinction between § 8-9-2 and § 7-2-201 that would prevent the application of the rule barring recovery under a tort theory where the underlying promise is barred by *1254 either Statute of Frauds. Accordingly, we affirm the summary judgment in favor of BSF on the fraud claims asserted by the shrimp-boat companies.
The shrimp-boat companies also urge us to reverse the summary judgment on their fraudulent-suppression claim.
“The elements of fraudulent suppression are: ‘(1) the defendant had a duty to disclose an existing material fact; (2) the defendant concealed or suppressed that material fact; (3) the defendant’s suppression induced the plaintiff to act or refrain from acting; and (4) the plaintiff suffered actual damage as a proximate result. Freightliner, LLC v. Whatley Contract Carriers, LLC, 932 So.2d 883, 891 (Ala.2005).’ Coilplus-Alabama, Inc. v. Vann, 53 So.3d 898, 909 (Ala.2010). ‘ “[A]n action for suppression will lie only if the defendant actually knows the fact alleged to be suppressed.” ’ Cook’s Pest Control, Inc. v. Rebar, 28 So.3d 716, 726 (Ala.2009) (quoting McGarry v. Flournoy, 624 So.2d 1359, 1362 (Ala.1993)).”
Alabama Psychiatric Servs., P.C. v. 412 South Court St., LLC, 81 So.3d 1239, 1247 (Ala.2011).
Regarding the shrimp-boat companies’ fraudulent-suppression claim, BSF argues that the shrimp-boat companies could not prove damage as a result of any alleged suppression and, thus, that the summary judgment in its favor on that claim should be affirmed. We agree. As explained by our supreme court in Holman, “ ‘the statute of frauds bars a [tort] claim when a plaintiff claims as damages the benefit of the bargain that he would have obtained had the promise been performed.’ ” Holman, 852 So.2d at 699 (quoting Sonnichsen v. Baylor Univ., 47 S.W.3d 122, 127 (Tex.Ct.App.2001)). The only damage resulting from the alleged suppression that Potter testified to in his affidavit is the difference between the purchase price BSF paid for the shrimp and the price BSF would have paid for the shrimp if it had paid the price allegedly quoted by John. Thus, if the suppression claim were allowed to proceed, the shrimp-boat companies could possibly recover in tort the benefit of the alleged oral contract that they are precluded from enforcing under § 7-2-201. Accordingly, we affirm the summary judgment in favor of BSF on the fraudulent-suppression claim.
The shrimp-boat companies also argue that the trial court erred in entering a summary judgment in favor of BSF on their unjust-enrichment claim. “To prevail on a claim of unjust enrichment under Alabama law, a plaintiff must show that: (1) the defendant knowingly accepted and retained a benefit, (2) provided by another, (3) who has a reasonable expectation of compensation.” Portofino Seaport Vill., LLC v. Welch, 4 So.3d 1095, 1098 (Ala.2008). “The amount of the re covery is limited to the value of the benefit gained by the defendant, regardless of the extent of the detriment to the plaintiff.” American Family Care, Inc. v. Fox, 642 So.2d 486, 488 (Ala.Civ.App.1994). As further explained by our supreme court,
“[w]here the plaintiff has suffered a detriment, and the defendant has received a benefit as a result, it is said that justice demands the repayment by the defendant of the plaintiffs loss. The measure of the defendant’s liability is, however, limited to the value of the benefit received, whether or not it is equal to, less than, or greater than the plaintiffs loss.”
Opelika Prod. Credit Ass’n, Inc. v. Lamb, 361 So.2d 95, 99 (Ala.1978) (holding that the remedy of quasi-contract was not available to the plaintiff where the defendant had “received no money, no profit from the *1255 sale of [chattel purchased with money provided by the plaintiff], and is in no better position as a result of the loan-”). BSF argues that it made no profit, and, in fact, incurred a loss, on the shrimp it purchased from the Brenda Darlene and the Apalachee Girl; David testified to the fact that BSF lost money on the shrimp in his affidavit. The only evidence that the shrimp-boat companies presented regarding damages was the difference between the price quoted and the price paid to them; they presented no evidence regarding the value of the benefit received and retained by BSF. Thus, the trial court properly entered a summary judgment on the unjust-enrichment claim.
We next consider the shrimp-boat companies’ argument that the trial court erred in entering a summary judgment in favor of BSF on their conversion claim. In their brief on appeal, the shrimp-boat companies cite only to the Alabama Pattern Jury Instructions, which defines the tort of conversion, to support their argument that the summary judgment on their conversion claim should be reversed. The appellate courts have long admonished appellants that citations to only general authority or the failure to make a cogent legal and factual argument for reversal places them in peril. See, e.g., White Sands Group, L.L.C. v. PRS II, LLC, 998 So.2d 1042, 1058 (Ala.2008) (“Rule 28(a)(10)[, Ala. R.App. P.,] requires that arguments in briefs contain discussions of facts and relevant legal authorities that support the party’s position. If they do not, the arguments are waived.”); Downs v. Lyles, 41 So.3d 86, 92 (Ala.Civ.App.2009). Thus, we affirm the summary judgment in favor of BSF on the conversion claim.
Finally, we turn to the shrimp-boat companies’ argument that the trial court’s grant of attorney fees to BSF as ALAA damages is unsupported by the evidence. Pursuant to the ALAA, a trial court must assess attorney fees against a party who brings an action or asserts a claim or defense that is “without substantial justification.” Ala.Code 1975, § 12-19-272(a). “Without substantial justification” is defined in the ALAA as being “frivolous, groundless in fact or in law, or vexatious, or interposed for any improper purpose, including without limitation, to cause unnecessary delay or needless increase in the cost of litigation.” Ala.Code 1975, § 12-19-271(1). The shrimp-boat companies contend that, although they did not prevail in the trial court, their claims were not frivolous or filed in bad faith or with malicious intent.
We agree that the award of attorney fees as ALAA damages must be reversed. The trial court failed to make the required findings to support an award of damages under the ALAA; its order did not find that the shrimp-boat companies’ claims were made without substantial justification, nor did it outline the factual basis upon which such a conclusion rested, as required by our supreme court. See Pacific Enters. Oil Co. v. Howell Petroleum Corp., 614 So.2d 409, 418 (Ala.1993). In addition, because the trial court did not make the requisite findings, we cannot determine our standard of review, which is dependent on whether the trial court determined that the claims were “groundless in law” or “groundless in fact,” “frivolous,” “vexatious,” or “interposed for any improper purpose.” See Schweiger v. Town of Hurtsboro, 68 So.3d 181, 186 (Ala.Civ.App.2011). We cannot affirm the trial court’s deficient award, so we reverse the judgment of the trial court insofar as it assessed ALAA damages against the shrimp-boat companies, and we remand the cause for the trial court to determine whether the shrimp-boat companies’ action was brought without substantial justification *1256 and for the trial court to make the necessary findings on the record or by separate order to support any attorney-fee assessment it may make on remand.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED WITH INSTRUCTIONS.
THOMPSON, P.J., and PITTMAN and BRYAN, JJ., concur.
MOORE, J., concurs in the result, without writing.

. At the time Wilma Corp. was decided, the justifiable-reliance standard announced in Hickox v. Stover, 551 So.2d 259, 263 (Ala.1989), governed the reliance element in fraud cases. In 1997, the supreme court abandoned the justifiable-reliance standard in favor of the reasonable-reliance standard in Foremost Insurance Co. v. Parham, 693 So.2d 409, 421 (Ala.1997).