MOORE, Judge.
Frank W. Autery and Janice P. Autery appeal from a judgment entered by the Tallapoosa Circuit Court ("the trial court") awarding K. Todd Pope $29,415.39 for modifications that Pope had made to a house and real property ("the property") owned by the Auterys. We reverse the trial court's judgment.
Procedural History
On October 21, 2015, Pope filed a complaint against the Auterys, who are Pope's mother and stepfather, requesting that the *848 trial court award him title to the property. In the alternative, he requested restitution for the improvements he had made to the property. Pope asserted that he was entitled to his requested relief pursuant to the theories of constructive trust, unjust enrichment, and equitable estoppel. On November 20, 2015, the Auterys answered the complaint and counterclaimed, asserting that, if Pope were to be awarded title to the property, they should receive compensation for all the work and labor that they had invested in renovating the property. On November 20, 2015, Pope filed a reply to the counterclaim.
After a trial, the trial court entered a judgment on February 3, 2017, concluding, in pertinent part:
"The Court finds that [Pope] did not prove that the [Auterys] intended for him to be fee simple title holder to the property at present; however, the Court finds that the [Auterys] would be unjustly enriched if they are allowed to retain the benefit of the improvements to the property paid for by [Pope]. It is ORDERED, ADJUDGED and DECREED that judgment is entered against the [Auterys] and in favor of [Pope] in the amount of twenty-nine thousand four hundred fifteen dollars and 39/100 ($29,415.39)."
On March 2, 2017, the Auterys filed a postjudgment motion. That motion was denied by operation of law on May 31, 2017. See Rule 59.1, Ala. R. Civ. P. The Auterys filed their notice of appeal on July 12, 2017.
Facts
The Auterys reside in Tallassee directly across the street from the property. In 2010, the Auterys purchased the property for $56,550. Frank testified that the Auterys intended to rent or sell the property, after renovating the house, in order to fund any medical or other care they might need in their advanced years. At the time of the trial, the Auterys were in their early seventies. Frank further testified that the Auterys had preliminarily identified a tenant who would rent the property after the renovations were complete for $650 per month, but, he said, they had abandoned that plan after Pope had indicated that he wanted to reside in the house.
Pope testified at trial that, at some point in 2011, the Auterys had promised him that they would deed him the property if he renovated the property. The Auterys, on the other hand, testified that they had not promised to convey the property to Pope in exchange for his renovation of the property, but had informed Pope that, if they still owned the property upon their deaths, they would leave the property to Pope as his inheritance. Three of Pope's sisters testified at trial regarding a November 2013 discussion of the ownership of the property. All three sisters basically testified that the Auterys had informed them and Pope that Pope would inherit the property and that Pope had not, during that discussion, protested that he was entitled to a present conveyance of the deed to the property in accordance with any alleged promise that had been made by the Auterys.
In November 2012, Pope, who had retired from the military seven years earlier on disability, moved from his home in Mississippi to Tallassee. Pope initially moved in with the Auterys, and, according to Pope, not long thereafter he and the Auterys began renovating the property. Pope testified that, over the next year or more, he and Frank had both contributed manual labor to the renovations and that Pope had spent $29,415.39 of his own money on modifying the property by, among other things, adding a water-filtration system, a security system, a tankless water heater, and a safe room.
Frank testified that the improvements Pope had made to the property had not *849 benefited him and Janice. Specifically, he testified that the improvements had not increased the fair market value or the fair rental value of the property and that he would not have made those improvements. For example, Frank testified that renovations Pope had made to one of the bathrooms did not "fit with the house." Frank testified that he had agreed to pay a plumber $1,200 to renovate the bathroom, but, he said, Pope had made improvements and those improvements had gone beyond what Frank had agreed to. Frank testified further that the security system, the tankless water heater, and the water-filtration system were not necessary, so he had informed Pope that Pope would have to pay for those items if he wanted them as part of the renovations. He testified that he and Janice had spent over $3,000 on renovating the property.
In April 2014, Pope moved onto the property and began paying the Auterys $500 per month as "rent." Pope, however, refused to sign a lease agreement presented to him by the Auterys. In June 2014, the Auterys contacted Bonita Caldwell, a real-estate attorney, who testified that, upon the Auterys' request, she had drafted various documents relating to the property, none of which Pope would agree to execute.
Standard of Review
"When evidence is presented ore tenus, the trial court is ' "unique[ly] position[ed] to directly observe the witnesses and to assess their demeanor and credibility." ' Ex parte T.V., 971 So.2d 1, 4 (Ala. 2007) (quoting Ex parte Fann, 810 So.2d 631, 633 (Ala. 2001) ). Therefore, a presumption of correctness attaches to a trial court's factual findings premised on ore tenus evidence. Ex parte J.E., 1 So.3d 1002, 1008 (Ala. 2008). When evidence is taken ore tenus and the trial judge makes no express findings of fact, this Court will assume that the trial judge made those findings necessary to support the judgment. Transamerica Commercial Fin. Corp. v. AmSouth Bank, N.A., 608 So.2d 375, 378 (Ala. 1992) (citing Fitzner Pontiac-Buick-Cadillac, Inc. v. Perkins & Assocs., Inc., 578 So.2d 1061 (Ala. 1991) ). We will not disturb the findings of the trial court unless those findings are 'clearly erroneous, without supporting evidence, manifestly unjust, or against the great weight of the evidence.' Gaston v. Ames, 514 So.2d 877, 878 (Ala. 1987) (citing Cougar Mining Co. v. Mineral Land & Mining Consultants, Inc., 392 So.2d 1177 (Ala. 1981) ). ' "The trial court's judgment [in cases where evidence is presented ore tenus] will be affirmed, if, under any reasonable aspect of the testimony, there is credible evidence to support the judgment." ' Transamerica, 608 So.2d at 378 (quoting Clark v. Albertville Nursing Home, Inc., 545 So.2d 9, 13 (Ala. 1989), and citing Norman v. Schwartz, 594 So.2d 45 (Ala. 1991) ); see also Ex parte Perkins, 646 So.2d 46 (Ala. 1994).
" 'However, the ore tenus standard of review has no application to a trial court's conclusions of law or its application of law to the facts; a trial court's ruling on a question of law carries no presumption of correctness on appeal.' Ex parte J.E., 1 So.3d at 1008 (citing Perkins, 646 So.2d at 47, and Eubanks v. Hale, 752 So.2d 1113, 1144-45 (Ala. 1999) ). This Court ' "review[s] the trial court's conclusions of law and its application of law to the facts under the de novo standard of review." ' Id. (quoting Washington v. State, 922 So.2d 145, 158 (Ala. Crim. App. 2005) )."
Espinoza v. Rudolph, 46 So.3d 403, 412 (Ala. 2010).
Discussion
The Auterys argue on appeal that the trial court erred in awarding Pope *850 $29,415.39 on his claim of unjust enrichment. The Auterys point out that the trial court determined in the final judgment that they had not intended to convey to Pope a fee-simple interest in the property, and, they say, it would be inconsistent with that determination to conclude that they had been unjustly enriched when Pope voluntarily remodeled the property to suit his needs. The Auterys further argue that they did not receive any benefit from the renovations made by Pope and that the trial court erred by determining that the value of any benefit they received amounted to $29,415.39, an amount they assert was proven largely by an exhibit that should have been excluded from evidence.
In its judgment, the trial court denied Pope's claim to obtain title to the property because it determined that the Auterys had not intended to convey to Pope a fee-simple interest in the property. Based on that factual determination, and considering the circumstances of the case, Pope entered into possession of the property as a tenant, with the permission of the Auterys. See generally Burgess v. American Mortg. Co. of Scotland, 115 Ala. 468, 471, 22 So. 282, 283 (1897). Ordinarily, in the absence of an express reimbursement agreement, a tenant who voluntarily makes improvements to leased property for his or her own convenience or accommodation cannot recover from the landlord the value of said improvements under the theory of unjust enrichment. See Woodson v. Harris, 615 So.2d 93, 94 (Ala. Civ. App. 1992). As an exception to this rule, a tenant may recover the reasonable value of the improvements upon the property of the landlord if the tenant had been induced to make the improvements by fraud, duress, undue influence, or mistake. See Benedict v. Little, 288 Ala. 638, 644, 264 So.2d 491, 496 (1972).
The parties dispute whether the exception should apply in this case. Pope contends that the evidence was sufficient to at least sustain a determination that he made the improvements under a reasonable, but mistaken, belief that, upon the completion of the renovations, he would acquire an immediate fee-simple interest in the property. The Auterys contend that the trial court at least implicitly determined that they did not make any statements that could have misled Pope in that manner and that Pope had merely acted for his own benefit in renovating the property to his own specifications. We need not resolve this dispute, however, because we conclude that, even if Pope did act under a mistake of such character that he could be entitled to restitution, Pope failed to prove an essential element to his recovery.
" '[T]he remedy of restitution is designed to remedy the detrimental effects caused by unjust enrichment.' Utah Foam Prods., Inc. v. Polytec, Inc., 584 So.2d 1345, 1351 (Ala. 1991). 'A claim for restitution is equitable in nature, and permits a trial court to balance the equities and to take into account competing principles to determine if the defendant was unjustly enriched.' United Coastal Indus., Inc. v. Clearheart Constr. Co., 71 Conn. App. 506, 513, 802 A.2d 901, 906 (2002) (emphasis added). Consequently, ' "[t]he success of a claim for unjust enrichment depends on the particular facts and circumstances of each case." ' DJ Painting, Inc. v. Baraw Enters., Inc., 172 Vt. 239, 245, 776 A.2d 413, 419 (2001) (quoting Morrisville Lumber Co. v. Okcuoglu, 148 Vt. 180, 184, 531 A.2d 887, 889 (1987) )."
Avis Rent A Car Sys., Inc. v. Heilman, 876 So.2d 1111, 1123 (Ala. 2003).
"[N]o ... restitutionary award may be had unless there has been some unjust *851 enrichment, because the remedy of restitution is designed to remedy the detrimental effects caused by unjust enrichment.... [I]n order to recover, it is incumbent upon the plaintiff, not only to establish the existence of the unjust enrichment, but to establish also the reasonable value of the services rendered."
Utah Foam Prods., Inc. v. Polytec, Inc., 584 So.2d 1345, 1351 (Ala. 1991).
" 'The amount of the recovery [on a claim of unjust enrichment] is limited to the value of the benefit gained by the defendant, regardless of the extent of the detriment to the plaintiff.' American Family Care, Inc. v. Fox, 642 So.2d 486, 488 (Ala. Civ. App. 1994). As further explained by our supreme court,
" '[w]here the plaintiff has suffered a detriment, and the defendant has received a benefit as a result, it is said that justice demands the repayment by the defendant of the plaintiff's loss. The measure of the defendant's liability is, however, limited to the value of the benefit received, whether or not it is equal to, less than, or greater than the plaintiff's loss.'
" Opelika Prod. Credit Ass'n, Inc. v. Lamb, 361 So.2d 95, 99 (Ala. 1978)."
Brenda Darlene, Inc. v. Bon Secour Fisheries, Inc., 101 So.3d 1242, 1254 (Ala. Civ. App. 2012). In Brenda Darlene, this court held that a summary judgment entered in favor of the defendant on a claim of unjust enrichment was proper because the plaintiffs had presented evidence of their detriment but had "presented no evidence regarding the value of the benefit received and retained by [the defendant]." 101 So.3d at 1255.
Similarly, in the present case, Pope presented evidence of only the cost of the renovations that he had made to the property. We see no need to address whether that evidence, which consisted mainly of a summary of the various expenditures Pope purportedly made to purchase supplies for renovating the property, should have been admitted. Even if properly admitted, that evidence did not show "the value of the benefit received and retained by" the Auterys. Indeed, Frank testified that the Auterys had received no benefit flowing from the renovations Pope had made. In his testimony, Frank denied that either the fair market value or the fair rental value of the property had increased as a result of the the renovations Pope had made. Pope did not present any evidence to contradict that testimony.
Because Pope failed to prove the value of the benefit received by the Auterys, his claim for restitution fails as a matter of law. Therefore, we conclude that the trial court erred in awarding Pope $29,415.39 in damages on his claim of unjust enrichment.
Conclusion
Based on the foregoing, we reverse the trial court's judgment and remand this cause for the entry of a judgment in favor of the Auterys.
REVERSED AND REMANDED WITH INSTRUCTIONS.
Thompson, P.J., and Pittman, Thomas, and Donaldson, JJ., concur.